[Crim. No. 16244.  Second Dist., Div. One.  Nov. 26, 1969.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES MARTIN, JR., Defendant and Respondent.

## COUNSEL

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Eugene D. Tavris, Deputy District Attorneys for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Samuel Y. Parks, Harold E. Shabo and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**LILLIE, J.**—Defendant was charged by information with possession of marijuana (Health & Saf. Code, § 11530) and possession of restricted drugs for sale (Health & Saf. Code, § 11911). When the cause came on for trial, a hearing was had to determine defendant's motion to suppress evidence (Pen. Code, § 1538.5); by stipulation the court first examined the transcript of the testimony taken at the preliminary hearing then heard testimony of Officer Ridenour and defendant. Upon the sole ground that Ridenour's informant was a material witness whose identity was not disclosed, the court granted the motion to suppress; when the prosecution immediately thereafter indicated that it had no evidence other than that suppressed, the court dismissed the action "in the interest of justice." From the order granting defendant's motion under section 1538.5, Penal Code, and order of dismissal the People appeal.[1]

The following was adduced at the preliminary examination and *de novo* at the subsequent superior court hearing. Early in September of 1968,

---

[1]Although there is recent authority to the contrary (*People* v. *Sheahan* *(Cal. App.) 79 Cal.Rptr. 299), and although the issue is not here raised, we adhere to our previous view that the order is appealable under the circumstances presented. (*People* v. *Superior Court,* 271 Cal.App.2d 338, 346 [76 Cal.Rptr. 712].) To the same effect is *People* v. *Foster,* 274 Cal.App.2d 778 [79 Cal.Rptr. 397], expressly disagreeing with *Sheahan* (p. 783).

*A rehearing was granted by the Court of Appeal on July 25, 1969. The final opinion was filed on December 2, 1969, and certified for nonpublication.

Officer Ridenour, assigned to the narcotic division for four years, received information from a confidential and reliable informant that one "Marty" and one "Jamie" were selling marijuana and dangerous drugs at a specified apartment address on South Harvard in Los Angeles, the purchasers including customers (homosexuals and prostitutes) of certain bars in the neighborhood. More specifically, he was told that "people would smoke marijuana in the apartment; that marijuana was kept in the closet and also in the bedroom between the box springs and the mattress . . ." and there was a gun kept at the apartment address and carried by one of the persons living there.

Three days later (September 7, 1968) Ridenour went to the specified address accompanied by Officers Sakoda and Haldi. They had neither a search warrant not a warrant of arrest upon arrival there about 12:15 a.m. When Ridenour knocked on the front door of the apartment, a voice from within asked, "Who is it?" When Ridenour replied, "Police Officers," the voice said, "Just a minute." Ridenour further stated: "We are narcotics officers conducting a narcotic investigation and I would like to talk to you." The door was then opened by defendant who identified himself as "Billy Johnson." Once again Ridenour stated that they were narcotics officers conducting a narcotic investigation. After exhibiting his badge, but without advising defendant of his right to refuse entry, Ridenour asked if the officers could come in and talk to him. Defendant replied, "Come on in." Inside the apartment Ridenour told defendant that they had a complaint that narcotics were being used and sold at that location. While giving defendant the above information, the officer detected the odor of burnt marijuana (several days old) in the living room. After again asking defendant if he lived there, and receiving an affirmative response, Ridenour asked him if he could search the premises. Defendant replied, "Sure, go ahead." The subsequent search by the three officers in various parts of the apartment resulted in the finding of several items of contraband,[2] some of which were uncovered in defendant's presence, including a shoebox containing marijuana debris, some blue-orange capsules wrapped in tinfoil, a cellophane package with 22 cigarettes containing a green leafy substance and numerous double-scored white pills. According to Officer Haldi, who testified at the preliminary hearing, defendant admitted that he lived in the apartment and owned a certain suit in the pocket of which contraband was found.

Following the discovery of the contraband, Ridenour placed defendant under arrest. Finally, though asked by defendant's counsel to do so, he

---

[2]At the preliminary hearing the parties stipulated that a forensic chemist, if called, would have testified that the items contained either marijuana or the dangerous drugs proscribed by the statute in question.

declined to reveal the identity of his informant. (Evid. Code, § 1041, subd. (a)(2).)

Testifying at the special hearing, defendant said that on the date of his arrest he lived at the address, sharing the apartment with others; when he heard a knock on the door, he asked who was there; upon being informed that the callers were police officers, he said to himself, "I wonder what they want"; told by the callers that they were "narcotic agents investigating the sale of pills" at that address, defendant replied that "there wasn't any pills being sold from there." He then opened the door wide enough for the officers to walk in. He admitted giving a false identification ("Billy Johnson"), doing so because he had some outstanding traffic warrants for his arrest; except for such warrants, defendant knew "[he] wasn't being wanted for anything. . . ." He testified further that the officers entered the apartment without invitation—he doubted that they first requested permission; as they did so, they asked if they could speak with them; since he had nothing to hide, he informed the officers that one of the beds in the apartment was his; without asking if they could search, the officers started looking around; one looked at some papers on a table and another started to pull down the wall bed; he made no protest, believing such objection to be futile; the officers made no mention of the smell of burning marijuana— he doubts there was any such odor in the room. However, asked on cross-examination if he knew of any narcotics in the apartment, defendant replied in the affirmative.[3]

Citing *Honore* v. *Superior Court,* 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169], the People first contend that the trial court lacked jurisdiction in the instant hearing to compel disclosure of the informant's identity relative to the issue of guilt and, upon subsequent refusal of such disclosure, to order the action dismissed—it being pointed out in *Honore* that "The proper method of obtaining such [identity] information is by use of a motion for pretrial discovery and not by use of the procedure established by Penal Code section 1538.5." (70 Cal.2d at p. 166, fn. 5.) Whether in the context of the above statement the word "proper" means the method "conforming to best usage" or, as seemingly suggested by the People, the "exclusive" vehicle for securing the information, it is undisputed that at no time during the hearing below was objection made to the procedure followed by the trial court on the ground now asserted. Inded, it

---

[3]The record reads as follows: "Q. Did you know of any narcotics in that house? A. Yes, I did. Q. Did you know of any— MR. PARKS [Defense counsel]: Motion to strike that and object to that question as beyond the direct examination. I just put him on for a limited purpose. THE COURT: Motion is granted."

appears that a recess was taken at the next to the final session so that the prosecuting attorney, at the court's request, could produce any evidence concerning the informant's presence (if such was the fact) in defendant's residence at any time. At the final session the prosecutor advised the court that he did not have any such evidence, whereupon the court proceeded to rationalize the ruling about to be given and the prosecutor stated, "I have nothing further, your Honor." Following the orally announced ruling, the prosecutor remained silent. Defendant now argues that any error in the circumstances was waived by failure to object.

The principle has long been settled that a party may be precluded from raising an error as a ground of appeal where, by conduct amounting to acquiescence in the action taken, he waived the right to attack it. The above rule has been applied against the People upon a showing of the prosecutor's failure to object. (*People* v. *Burke,* 47 Cal.2d 45, 63 [301 P.2d 241].) In *Burke,* without formally appealing from the order striking the charge of a prior narcotic conviction, the People "ask[ed] reversal of the judgment for the purpose of having defendant's sentence increased." P. 47.) It appearing that the prosecutor remained silent when the trial court announced its intention to strike the charge, it was held that such conduct amounted to an assent to the ruling; it was further concluded that "The failure of the People to appeal, like their silence when the dismissal order was made, indicates acquiescence in the order and the sentence which followed." (P. 54.) Since this is an appeal by the People, there is less persuasiveness ascribable to *Burke* than that for which defendant argues; however, we are not inclined to dispose of the problem in the summary fashion suggested by the People. We take this view because of the realities of the situation, our concern with which is invited by the People in yet another aspect of the case (App. Op. Br. p. 40.) In *Mitchell* v. *Superior Court,* 50 Cal.2d 827 [330 P.2d 48], the court declared that "A defendant is entitled at his trial to ascertain on cross-examination the name of an informer who is a material witness on the issue of guilt." (P. 829.) Accorded the above right in the instant case, defendant could have waited until the officer testified at the trial and then, upon disclosure, sought a continuance in order to secure the informant's presence: ▆ "It cannot be presumed that the superior court will erroneously deny disclosure at the trial or fail to grant a continuance if it is necessary to enable defendants to locate and interview the informers in the preparation of their defense." (*Supra,* p. 830.) Efficiency in the administration of justice is not promoted by ignoring the evident intent of the trial court to consider defendant's motion (belatedly perhaps) as one for pretrial discovery and refusing to sanction its eventual determination on the narrow ground here asserted. Accordingly, we proceed to dispose of the matter on its merits.

It is contended by the People that defendant has not borne the burden of showing that " 'the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.]" (*People* v. *Garcia*, 67 Cal.2d 830, 839 [64 Cal.Rptr. 110, 434 P.2d 366].) The rule above quoted is prefaced by the words "in view of the evidence," and in a footnote (fn.10, p. 839) the court in *Garcia* pointed out that "It is necessary that a broad definition of 'evidence' be adopted in the premises." Notwithstanding such *caveat,* which they recognize and concede, the People nonetheless argue that the record is barren of any showing that the informant could "give evidence on the issue of guilt which might result in defendant's exoneration" (*supra,* p. 840); at most, it is asserted, the informant here is one who "sets in motion investigatory work which causes the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act and has no material evidence to give." (*People* v. *Scott,* 259 Cal.App.2d 268, 281 [66 Cal.Rptr. 257].) We think this latter contention is a valid one.

The order of disclosure was predicated on the court's finding that the informant was a material witness, *not* on the ground of an illegal search and seizure. Defendant was arrested for acts committed on September 7, 1968, namely, his possession of marijuana and restricted dangerous drugs; the information expressly so charges. Such arrest was made on the basis of what the officers observed and found after they had been admitted into defendant's apartment. As to the offenses charged, there is nothing to indicate that on that day (September 7) the informer either had been or was on the premises, participated in defendant's activities or had seen, known or related anything concerning the presence of contraband there and then found. To the contrary, Officer Ridenour testified that he proceeded to defendant's apartment three days *after* receipt of the information on which he relied, and there is no showing or suggestion that he had been in contact with his informer at any time during the days intervening. ▇ While defendant need not prove that the informer could give testimony favorable to him in order to compel disclosure of his identity nor need he show that he was a participant in or eyewitness to the crime (*People* v. *Garcia,* 67 Cal.2d 830, 837 [64 Cal.Rptr. 110, 434 P.2d 366]), he does have the burden of showing "a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." (*People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Honore,* 70 Cal.2d 162, 168 [74 Cal.Rptr. 233, 449 P.2d 169].) ▇ That showing must encompass more than speculation. It has not been made in the case at bench. Certainly here there is no showing how the cross-exami-

nation of the informer "might" have helped his defense—that on September 7, 1968, the contraband belonged to and was brought to the premises by another. (*People* v. *De Leon,* 260 Cal.App.2d 143, 153 [67 Cal.Rptr. 45].) It is clear from the record that the role of the informer was limited; he simply pointed the finger of suspicion at defendant putting the wheels of investigation in motion; and he in no way participated in the criminal acts for which defendant three days later was arrested. (*People* v. *Rodriguez,* 204 Cal.App.2d 427, 431 [22 Cal.Rptr. 324].) Unlike the situation in *People* v. *Garcia,* 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366], which was distinguished in *De Leon,* defendant admitted living at the apartment; and while it was stated in *Garcia* that under "relevant circumstances" an informer who is neither an eyewitness nor a participant can be a material witness, unlike defendant Garcia (who claimed to have been on the premises solely for a "fix") there are absent here any factors which are consistent with such claims of innocence.

As there is an inadequate basis to compel disclosure of the identity of the informant on the issue of guilt there is also an inadequate showing to require such disclosure on the issue of probable cause. "The rule requiring disclosure of an informer's identity has no application in situations where reasonable cause for arrest and search exists aside from the informer's communication." (*People* v. *Hunt,* 216 Cal.App.2d 753, 756-757 [31 Cal.Rptr. 221]; *People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19]; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 816-817 [330 P.2d 39].) Entirely discounting the confidential communication to Officer Ridenour by the undisclosed informant he had sufficient information in his possession to justify defendant's arrest. (*People* v. *Rodriguez,* 204 Cal.App.2d 427, 432 [22 Cal.Rptr. 324].) Officer Ridenour was at defendant's address in the course of a routine narcotic investigation three days after the information was conveyed to him; as far as the officer knew, defendant was "Billy Johnson," the name defendant gave the officers when he learned they were conducting a narcotic investigation and opened the door. Inside the apartment with the consent of defendant, Officer Ridenour detected the odor of burnt marijuana; upon ascertaining from defendant that he lived there (which defendant does not now deny) Officer Ridenour asked if he could search the premises and defendant answered in the affirmative. The result of the search was the recovery of narcotics in the apartment in which he lived and from the pocket of a suit which he admitted owning.

The deficiencies in the showing made by defendant are not remedied by the prosecution's evidence. It cannot validly be urged that the record establishes a doubt that defendant exercised that degree of dominion over the contraband required to support a conviction for possession. In

*People* v. *Redrick,* 55 Cal.2d 282, 288 [10 Cal.Rptr. 823, 359 P.2d 255], it was held that knowledge alone of the presence of the proscribed items is not sufficient evidence that the offense had been committed. In *Honore, supra* (70 Cal.2d 162), the *Redrick* holding is cited for the propositioṇ that the defendants there *might not* have exercised the required degree of dominion over the contraband since four other persons, seen by the informant at the apartment, could possibly have brought the marijuana onto the premises before the arrival of the defendants. Too, in a footnote (fn. 7) the court rejected the People's argument that defendant Newman should have been denied discovery because he was allegedly apprehended with marijuana in his possession; it was pointed out, among other things, that Newman was merely a visitor to the apartment and not in possession of the premises. In the present case, however, the facts are otherwise. According to defendant's own admission, as shown above, defendant resided at the address; further, to Officer Haldi he admitted ownership of a suit in the pocket of which certain contraband was found.  ■  While *Redrick* stands for the legal principle above stated, proof of dominion and control over the drug with knowledge of its presence and narcotic character may be supplied by circumstantial evidence alone and any reasonable inference drawn from such evidence (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 453 P.2d 600]; *People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359]) including an inferential showing of joint and constructive possession (*People* v. *Haynes,* 253 Cal.App.2d 1060, 1064 [61 Cal.Rptr. 859]); accordingly, as pointed out in *Haynes,* it is also held in *Redrick* that recent association with the narcotic by use or otherwise may be inferred from the presence of the contraband in the clothing of the accused.

The above circumstances, in our opinion, relegate to a minor and unimportant position in this proceeding the question and answer and the ruling thereon referred to in footnote 3, *supra.* The People contend that defendant's answer, in which he admitted knowledge of narcotics in the apartment, was improperly stricken.  ■  But even if the court correctly ruled on defendant's motion to strike, for reasons already stated the

defendant has failed to make the required showing that the identity of the informer is material to his defense.

The orders are reversed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied December 10, 1969, and respondent's petition for a hearing by the Supreme Court was denied January 21, 1970.