[Crim. No. 22049. Second Dist.. Div. Two. Apr. 3, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS KILPATRICK, Defendant and Appellant.

## COUNSEL

John J. Schimmenti, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Bradley A. Stoutt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant appeals from a judgment rendered in a nonjury trial finding him guilty of violating Penal Code section 12220 (possession of a machine gun) and Penal Code section 12021 (ex-felon in possession of a concealable firearm).

The weapons which defendant was charged with possessing were discovered by law enforcement agents in an "attic type compartment" behind a bedroom wall panel during the search of a house leased and occupied by defendant in Torrance, California. (A list of the weapons is affixed as Appendix "A.") The search was conducted by authority of a warrant directing a search for narcotics and dangerous drugs and which was issued on the strength of information provided by a confidential reliable informant. The defendant was named in the warrant. (That portion of the affidavit setting out the information given by the informant is affixed as Appendix "B.")

Defendant's principal attack on the judgment of conviction is an assertion that the trial court erroneously refused to compel disclosure of the identity of the informant. Since the correctness of the trial court's ruling turns on the informant's status, or lack of it, as a material witness on the issue of guilt, we first set out the evidence upon which the prosecution relied to establish defendant's possession of the weapons.

On February 23, 1971, defendant leased a two-story vacant house at 1239 West 225th Street, in Torrance, California, and shortly thereafter

subscribed for the various utilities. While the house was small and somewhat dilapidated, there were no bullet holes in the walls.

According to defendant the house was used as a meeting place for a motorcycle club called "The Hangmen" of which he was president. Defendant was at the time on probation after being convicted of assault with a deadly weapon in 1968.

The owner of the house collected the rent in cash from defendant on one occasion and on another occasion, April 23, 1971, observed defendant on the premises. On the latter date defendant was seen using a motorcycle which the owner had observed parked in the living room of the house.

On May 20, 1971, the next door neighbor heard a number of gun shots coming from defendant's house. One shot entered the wall of this neighbor's house, knocking off some of the interior plaster. This neighbor called the sheriff's office.

The deputy sheriff who responded to the call knocked at defendant's door. Defendant answered and stated he was "the man of the house." The deputy sheriff observed about 10 bullet holes in the living room walls. The defendant denied having heard any shots and explained that he had made the holes in the wall with a speargun. No arrest was made.

The search in question was conducted on May 25, 1971. Defendant was not present but one Dunsworth, an associate of defendant, was arrested on the premises and was jointly charged with defendant. A third suspect was arrested when he drove up during the course of the search.

The officers observed in various parts of the house, framed pictures of defendant hanging on the living room walls, defendant's Marine Corps discharge and other identification papers, mail addressed to defendant, utility bills bearing defendant's name and items of men's clothing in one of the bedroom closets.

The searching officers observed .38 caliber bullet holes in the walls of the house. In early June, the owner of the house returned to the premises and observed bullet holes in the back door, the living room walls and the upstairs ceiling. He recovered three spent .38 shell casings from the upstairs bedroom.

At the trial defendant denied possession of or knowledge of the presence of the guns at the house. He claimed only a casual connection with the house in terms of a few occasional visits. He admitted being at the house on May 20, 1971, and, contrary to what he told the deputy sheriff, hearing some unknown person fire a shot inside the house. Defendant explained

that his reason for lying to the deputy sheriff was that the terms of his probation included a prohibition against his possession of a firearm.

Prior to trial defendant moved to discover the name of the informant. The motion was denied. Subsequently codefendant Dunsworth also made a discovery motion to obtain the name of the informant. At the outset of that hearing defendant's attorney advised the court that should any evidence develop which would indicate that the informant was a material witness, his motion for discovery would be renewed.

The court, out of the presence of the defendants, conducted an *in camera* session with the officer who had prepared the affidavit. On returning to the courtroom the judge announced that he would proceed in the manner described in *People* v. *Superior Court,* 19 Cal.App.3d 522 [97 Cal.Rptr. 118]. In that case it was held at page 531 that the *in camera* hearing provided by Evidence Code section 915, subdivision (b), was only a preliminary inquiry as a "prelude to a more extended inquiry," and that following such hearing "The court should continue its inquiry in an adversary setting, probing the information's relevance to the defense, . . ."

Thus in the case at bar the officer was then called to the stand and claimed the privilege whereupon he was extensively cross-examined by counsel for all defendants. The court denied Dunsworth's discovery motion. Defendant Kilpatrick did not renew his motion for discovery for the obvious reason that no evidence was developed which indicated the materiality of the informant's identity.

 The procedure which the court followed was proper and fully complied with *People* v. *Superior Court, supra,* and Evidence Code section 1042, subdivision (d),[1] and its finding that the identity of the informant

---

[1]Evidence Code section 1042, subdivision (d) provides: "When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may

was not material to the defense was a proper exercise of its discretion. (See *People* v. *Martin*, 2 Cal.App.3d 121 [82 Cal.Rptr. 414]; *People* v. *Castillo*, 274 Cal.App.2d 508 [80 Cal.Rptr. 211].)

We have reviewed the proceedings of the *in camera* hearing and aside from revelation to the court of the reasons for the officers' apprehension about disclosure, nothing was developed beyond what was contained in the affidavit. Nor was any evidence other than that contained in the affidavit produced at the hearing on either of the discovery motions. Further, the defendant failed to show with any specificity how nondisclosure would affect his defense.

Thus the resolution of this issue must rest solely on an examination of the affidavit. It is noteworthy that while the informant claimed to have seen defendant in possession of narcotics and dangerous drugs on the premises, he made no mention of any "secret" panel or the presence of the cache of firearms.

Although the affidavit discloses that he had seen defendant in possession of a gun, the informant was not a participant in, nor an eyewitness to, the crime for which defendant was convicted, i.e., possession of the weapons in the secret compartment.

"A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' [Citation.] His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies." (*People* v. *McShann*, 50 Cal.2d 802, at p. 808 [330 P.2d 33].)

However, an informer can be a material witness even though he neither participated in nor was an eyewitness to the offense charged. (*People* v. *Garcia*, 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366]; *Honore* v. *Superior Court*, 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169].)

A defendant seeking to discover the identity of an informant has the burden of showing that in view of the evidence in the particular case

have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

the informant would be a material witness on the issue of guilt and that nondisclosure would deprive him of a fair trial. (*People* v. *Garcia, supra.*) That burden is discharged by demonstrating a reasonable "possibility" that the informant "might" be able to exonerate defendant. (*Honore* v. *Superior Court, supra.*)

We confess that the very broad language of *Garcia*, repeated in *Honore*, which includes the words "possibility" and "might" gives us pause. It is apparent that the language in Evidence Code section 1042, subdivision (d), was adopted from those cases.

The underlying purpose of the exclusionary evidence rule is to encourage the use of search warrants by police officers and it has long been established that a search warrant may be based solely upon information from a reliable informant. (*People* v. *Keener*, 55 Cal.2d 714 [12 Cal.Rptr. 859, 361 P.2d 587].) Yet when application for a search warrant is based upon such information the courts require that the affidavit demonstrate that the informant spoke with personal knowledge of the facts contained in his information. (*Aguilar* v. *Texas*, 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Price* v. *Superior Court*, 1 Cal.3d 836 [83 Cal.Rptr. 369, 463 P.2d 721].) It goes without saying that the greater that knowledge appears to be the more reliable the informant becomes.

Superficially it might be argued that any informant who purports to speak with first hand knowledge of a defendant's possession of contraband or other evidence of a felony "might possibly" be a material witness on the issue of the guilt of the defendant. The result of such reasoning, however, would be to make it impossible to obtain a search warrant on the basis of information from a reliable informant unless the police officer was prepared to disclose the informant's identity.

We do not attribute to the Supreme Court's opinions an intent to create such a drastic rule. Nor do we think that the Legislature, in enacting the various Evidence Code sections dealing with the informer privilege, was intending to perform an idle act.

The words "might" and "possibility" have vague and almost limitless perimeters that must be determined on a case-by-case basis and on review great weight should be afforded the trial court's determination.

■ As stated in *People* v. *Superior Court*, 19 Cal.App.3d 522, at page 530 [97 Cal.Rptr. 118], the rule requiring disclosure in some cases "imposes a balancing process on the courts. . . . it does not license fishing trips. . . . it compels the claimant to throw into the balance some showing of the 'plausible justification' . . . . In a criminal case the

defendant must at least show how the information affects the preparation or presentation of his defense."

That showing must go beyond the mere fact that the informant obviously possessed knowledge of defendant's criminal activities. (See *People* v. *Sewell,* 3 Cal.App.3d 1035 [83 Cal.Rptr. 895].)

In our view of the evidence here the defendant has demonstrated no reasonable possibility that the informant might have aided in exonerating him. Defendant makes only the bare suggestion that the informant might establish that someone other than defendant possessed the weapons.

The overwhelming evidence pointing to defendant's possession of the weapons would not be diminished by showing that someone else possessed them jointly with him. Nor is there the slightest possibility that the informant "planted" the weapons since he provided no information concerning them.

The case at bench is clearly distinguishable from *Garcia* and *Honore,* but is instead comparable to *People* v. *Goliday,* 8 Cal.3d 771 [106 Cal. Rptr. 113, 505 P.2d 537].)

In *Goliday* defendant was charged with sale and possession for sale of dangerous drugs. The sale took place at defendant's apartment in the presence of an officer and two eyewitness informers. After the sale was consummated, the officers searched the apartment and found large quantities of drugs.

The Supreme Court reversed the sale conviction on grounds that the prosecution failed to disclose information concerning the informants and failed to take reasonable steps to obtain information by which the informants could be located as required by *Eleazer* v. *Superior Court,* 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42]. The conviction of the crime of possession for sale was affirmed however. The court reasoned that the elements of that crime were established without reference to anything the informer might have witnessed and there was no suggestion that the informer could have "planted" the drugs. The principle of that holding fits squarely with the facts of this case.

The defendant has failed to carry his burden of establishing the need for compelling disclosure of the informant's identity.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied May 1, 1973, and appellant's petition for a hearing by the Supreme Court was denied May 30, 1973. Burke, J., did not participate therein.

## Appendix "A"

A German Bolt Action Rifle
A .22 Caliber Semi-Automatic Rifle with Scope
Two 30-30 Lever Action Winchester Rifles
A 9 MM. Fully Automatic Machine Gun with a 40-Round Capacity Magazine
A 12-Gauge, Sawed-Off Shotgun
A Speargun
A .38 Caliber Revolver
A .45 Caliber Revolver
A .32 Caliber Revolver
A .45 Caliber Automatic Pistol
A .32 Caliber Automatic Pistol
A 9 MM. Caliber Automatic Pistol
Two Black Leather Holsters
Three Magazines Containing Ammunition
Two 20 MM. Dummy Rounds
An Assortment of Eighteen (18) large Knives, Machetes, Daggers, and Swords
A Metal Ammunition Box Containing a Variety of Ammunition
One Container of Chemical Mace

## Appendix "B"

"On the date of May 24, 1971, at approximately 2:00 p.m. your affiant (received information from) a confidential reliable informant that on May 22, 1971 at approx. 4:00 A.M., said confidential reliable informant was inside a residence on 225 Street just east of Normandie Avenue. Said confidential reliable informant told your affiant that the male living at the said residence on 225 Street was named Thomas Kilpatrick. Said confidential reliable informant told your affiant that while the confidential reliable informant was inside the residence on 225th Street, the confidential reliable informant observed in the northern bedroom the contents of an olive green footlocker. The confidential reliable informant told your affiant that the contents of the said footlocker appeared to be packages of white crystalene powder and the confidential reliable informant told your affiant that said Thomas Kilpatrick told the confidential reliable informant the crystalene powder was 'speed.' The confidential reliable informant told your affiant that said informant has observed crystalene powder resembling 'speed' on about fifteen prior occasions and that this crystalene powder referred on Page 2, Line 30, resembles 'speed' to the confidential reliable informant.

"The confidential reliable informant told your affiant that said informant observed Thomas Kilpatrick inject the white crystalene powder into said Thomas Kilpatrick's arm on three occasions while the confidential reliable informant was inside said premises on May 22, 1971.

"The confidential reliable informant further told your affiant that while said informant was inside the premise on 225th Street, May 22, 1971, said informant observed two kilogram packages of plant material resembling Marijuana and approximately 500 red capsules resembling Seconal in the front room of the said premise. The confidential reliable informant told your affiant that said informant has observed red capsules more that 100 times in the past and that these red capsules were known to the confidential reliable informant as 'reds.' The confidential reliable informant has observed plant material resembling Marijuana on 50 prior occasions and that this plant material observed in the front room of the said residence resembled Marijuana to the confidential informant.

"The confidential reliable informant further told your affiant that while inside said premises on May 22, 1971, the said informant observed Thomas Kilpatrick to have a .45 caliber automatic pistol tucked in his waistband at all times. The confi-

dential reliable informant also observed a person known to the informant as Major to be inside the said residence and to have a .38 caliber revolver tucked in his waistband.

"On May 25, 1971 at 10:15 A.M., your affiant received a telephone call from said confidential reliable informant. The informant told your affiant that said informant was inside the residence on 225th Street on May 24, 1971 around 10:00 P.M. While the said informant was inside the residence, said informant observed three suitcases containing kilograms of plant material resembling Marijuana in the living room. Said informant also observed seven (7) jars of red capsules resembling Seconal to the informant and seven (7) jars of white tablets resembling Benzedrine to the informant in the rear bedroom of said residence on 225th Street. Said confidential reliable informant told your affiant that while said informant was inside the residence on 225th Street on May 24, 1971 at about 10:00 P.M., said informant observed Thomas KILPATRICK to be carrying a .45 automatic pistol in his waistband.

"Acting on the information your affiant has received, as stated in this affidavit, and in addition thereto, your affiant has conducted the following further independent investigation, to wit: May 24, 1971 at about 2:30 P.M., your affiant drove the confidential reliable informant to the area of 225 Street and Normandie. The confidential reliable informant pointed out a residence bearing the address 1239 W. 225 Street and told your affiant this was the residence that the informant was inside on May 22, 1971 and that this was the same residence that the informant observed the crystalene powder inside and that this was the same residence where Thomas KILPATRICK resided.

"Your affiant checked with the Southern California Gas Company and ascertained that the subscriber for utility service at 1239 W. 225 Street, Torrance is Thomas M. KILPATRICK and has been a subscribing customer at that address since February 19, 1971."