[Crim. No. 27874. Second Dist., Div. Five. May 17, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD POLACIOS BORUNDA, Defendant and Respondent.

## Counsel

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Joseph T. Vodnoy for Defendant and Respondent.

## Opinion

**ASHBY, J.**—Defendant was charged in two counts with possession for sale of heroin and possession for sale of marijuana (Health & Saf. Code, §§ 11351, 11359). The trial court dismissed all charges following the People's refusal to disclose the identity of a confidential informant. The People appeal from the order of dismissal pursuant to Penal Code section 1238, subdivision (a)(8).

The prosecution evidence at the hearing on the motion to compel disclosure[1] was as follows: Los Angeles Police Officer Lawrence Parino received information on April 4 and 5, 1974, from two confidential informants. Informant Number One said that Richard Borunda was currently trafficking in large quantities of heroin and described Borunda as a male Mexican, five nine to five ten, 160 pounds, with black hair and brown eyes. The informant stated that within the past two weeks he was present when Borunda delivered two ounces of heroin to a male in the Highland Park area. This informant had previously given information leading to arrests and seizures of large quantities of heroin.

Informant Number Two told Officer Parino that Richard Borunda, who lived at 4869 Templeton, was dealing in heroin. He said that Borunda drove a black-over-silver Cadillac Eldorado. The informant said he was with a group of males, including Borunda, when Borunda stated that he was expecting a large shipment of heroin sometime on April 9. Officer Parino had a number of prior contacts with this informant, who had given information which "[had] been verified by our department" and who had participated in two buys of heroin.

The above is the only extent to which the informants participated in this case. They were not involved in the subsequent surveillance, the arrest of defendant, or the seizure of evidence. The trial court's order compelling disclosure was directed only toward Informant Number Two, defense counsel having conceded that Informant Number One was not a material witness. ■ The issue is whether defendant demonstrated a reasonable possibility that Informant Number Two could give evidence on the issue of guilt or innocence which might result in defendant's exoneration, thus requiring disclosure of his identity. (*Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Borunda,* 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1].)

Officer Parino and other officers conducted a surveillance of 4869 Templeton on April 9, the date of the expected shipment. At 3 p.m. defendant drove a black-over-silver Cadillac Eldorado into the driveway. He had a passenger, a male Mexican, approximately 30 years old, 5 feet 7 inches, 130 pounds, dressed in a black outfit. The man in black got out and opened the garage door, and the car went inside. Fifteen minutes

---

[1]The hearing was also directed to a motion to suppress evidence under Penal Code section 1538.5. However, since the trial court dismissed the charges for refusal to disclose the informant, it did not decide the Penal Code section 1538.5 motion.

later two male Mexicans in a light blue Chevrolet drove by the premises, stopped briefly in front, went around the block and past again, went part way around the block again and parked. The two occupants walked to the residence and went inside. One of them, wearing a large brown coat, held his arms as if carrying something. Five to ten minutes later, defendant and the man in black drove out of the garage and were followed to a drugstore. The man in black went into the drugstore and purchased six dozen condoms. He and defendant then drove back to Templeton and went back into the garage. About 4 p.m. the man in black and the two occupants of the Chevrolet left the residence on foot and went to the Chevrolet, and the man in black put a brown paper sack under the front passenger seat. They drove away and police officers followed them but lost them.

In the meantime, defendant drove out of the garage again and went to a store. Officer Parino stopped defendant there to conduct a narcotics investigation, and as defendant was stepping out of his car, Officer Parino observed a condom containing a brown substance in his shirt pocket. Based upon his experience and the information available to him, Officer Parino concluded that the substance was heroin and arrested defendant. Defendant was advised of and waived his constitutional rights. Parino asked defendant if he had any more heroin at the residence, and defendant said, "No. A person by the name of Daniel gave me two ounces for letting me [sic] use my residence to cut up a large quantity of heroin, but already left." Parino asked if it would be all right if he searched the residence and defendant said, "Sure, go ahead. There's nothing there anymore."

Defendant and the police returned to the residence. Albert Valenzuela Gomez, also known as Albert Garcia, was found leaving from the back door.[2] The following evidence was seized at 4869 Templeton: 306 grams of heroin; 1,409 grams of marijuana; several jars and boxes of lactose sugar; a strainer; an electric mixer containing heroin residue; condoms and balloons; and utility bills in the names Richard Borunda, Elias Borunda, and Rita Borunda. Based upon the quantity and the paraphernalia found at the premises, it was Officer Parino's opinion that the contraband was held for purposes of sale.

The defense introduced evidence at the hearing to support its theory that Informant Number Two would be a material witness whose identity

[2]The case against Gomez was dismissed for insufficient evidence at the preliminary hearing.

should be disclosed. Defendant testified that the premises actually consist of five units, a duplex in front, with three units in the house in back. They belong to his grandmother, but two of them are rented out, and he and his grandmother pay the utilities. Willie Nunez rented the back apartment. Defendant lives elsewhere, on First Street. At 3 p.m. on April 9, defendant drove, alone, to the premises. Albert, the brother of David Garcia Gamez,[3] was there, working on putting in some new floors.

David Garcia Gamez testified that he and a friend named Ray arrived in the Chevrolet. David was looking for his brother to find out what time he would finish work. He did not carry anything inside with him. Willie Nunez asked him to go to the drugstore and buy some rubbers for him. Nunez gave him $15. Defendant asked him to get some shaving cream and razor blades, and to take defendant's Cadillac. Defendant testified that he did not know anything about the rubbers. Gamez testified he did not observe any narcotic activity. Gamez and Ray went to the store to make the purchases. Defendant testified that while David Gamez was at the store, defendant was alone in the house; Albert was in the rental. When Gamez returned, he stayed awhile, then took a bag of fruit with him and put it in his car. He and Ray left and went home.

Defendant testified as to what occurred next:

"A. . . . I, from the back of my breakfast room there is a view of the back yard, and I seen Willie putting something in the, you know, stashing something, so when he left, I went outside and I picked it up, and it was the stuff that was in the rubber, so I put it in my pocket, I went back inside, and I got my jacket and I put it on, and then I went to the garage, and I took off to take her down to my grandma's house.

"Q. [Counsel for defendant] Did you know or did you think that it was narcotics?

"A. Yeah. Well, I thought I seen him stashing something, so I figures it was something like—

"Q. Was he using narcotics at that time?

"A. Yes.

---

[3]Apparently, this was Albert Valenzuela Gomez, also known as Albert Garcia, who was arrested leaving the premises when the police arrived.

"Q. And you were intending to hide it somewhere else; is that correct?

"A. Yes, at my grandma's house."

Defendant further testified that he never stated he was expecting a shipment of heroin on April 9.[4]

The argument for compelling disclosure of the identity of Informant Number Two is that the informant might testify it was someone else, not defendant, who stated he expected a shipment of heroin on April 9, and that this would support a defense theory that Willie Nunez possessed the heroin found at the premises. The trial court ordered disclosure, stating:

"It must be noted that the charge is not possession, but possession for sale, both the items included in Count I and Count II. . . . [¶] This information for probable cause would certainly go to possession for sale, as defense was entitled to put on evidence, testimony, which placed the defendant in position of being merely in possession of the contraband found. [¶] Therefore, it would seem to me apparent that the testimony of this informant, that he in fact did hear defendant make this statement, would be most relevant on the issue as to whether or not the defendant, at the time he was found in possession of this, was in fact possessing it for sale or for the reason that he indicates. [¶] Now, that was the basis for the ruling, Counsel."[5] When the People refused to disclose the identity, the court dismissed all charges.

## DISCUSSION

■■ ■■ The People concede that the theoretical possibility the informant could testify that someone other than defendant said he was expecting a shipment of heroin on April 9 renders the informant a material witness as to whether defendant possessed the heroin for purposes of sale. However, the People contend the trial court erred (1) in dismissing the heroin count rather than reducing it to simple possession

---

[4]The remaining testimony was directed to the search and seizure issues. Defendant claimed that the rubber of heroin in his shirt pocket was not in plain view because he was wearing a buttoned jacket, and that he did not give consent to search the house.

[5]The court also stated:
"Well, in this particular situation it certainly would go very strongly, in my mind, to the credibility of the defendant and the defendant's testimony, and certainly credibility on one portion of his testimony is going to weigh very heavily on credibility in other vital areas of his testimony."

and (2) in dismissing the marijuana count, there being no evidence the informant could give any testimony about marijuana. We conclude that these contentions are correct and that the order of dismissal must be reversed.

■ The purpose of compelling disclosure of an informant who is a material witness on the issue of guilt, and of the remedy of dismissal if the People invoke confidential privilege, is to assure the defendant a fair trial on the offense charged. However, the trial court's orders should go no further than necessary to protect the defendant's right to a fair trial. (*People* v. *Superior Court (Biggs)*, 19 Cal.App.3d 522, 533-534 [97 Cal.Rptr. 118].) ■ Where the informant would be a material witness who might give testimony exonerating the defendant of sale or possession for sale, but there is no evidence he could give testimony exonerating the defendant of simple possession, the trial court should reduce the charges to simple possession rather than to dismiss them in their entirety. (*People* v. *Long*, 42 Cal.App.3d 751, 756-758 [117 Cal.Rptr. 200]; see *People* v. *Lamb*, 24 Cal.App.3d 378, 382 [101 Cal.Rptr. 25]; see also *People* v. *Goliday*, 8 Cal.3d 771, 783-784 [106 Cal.Rptr. 113, 505 P.2d 537]; *People* v. *Acuna*, 35 Cal.App.3d 987, 991-992 [111 Cal.Rptr. 878].) ■ Here the trial court's comments indicate that it recognized the distinction between the informant's materiality as to possession versus possession for sale, but the court failed to observe this distinction in its order. (*People* v. *Long, supra,* at p. 758.)

As to the heroin, defendant failed to demonstrate a reasonable possibility that the informant might exonerate him of simple possession as well as possession for sale. In his own testimony at the hearing, defendant admitted having an interest in the premises and being alone in the house after David Gamez went to the drugstore. The record does not indicate that the heroin, heroin paraphernalia, and marijuana found at 4689 Templeton were in a portion of the premises exclusively occupied by Willie Nunez. In addition, according to Officer Parino, defendant admitted to him that a person named Daniel gave him two ounces of heroin for permitting the use of the premises to cut heroin.

Furthermore, heroin was found not only at the premises but also in defendant's shirt pocket. There is no possibility the informant could give testimony exonerating defendant of possession of that heroin. *(People v. Acuna, supra.)*

■ As to the large amount of marijuana found on the premises, defendant's guilt of possession for sale of that marijuana was established based on the quantity involved and independent of anything the informant might testify. (*People* v. *Goliday, supra; People* v. *Acuna, supra.*) There was no showing of any reasonable possibility the informant could give testimony concerning the marijuana. The informant had said nothing to the police about marijuana. The record supports no inference other than sheer and unreasonable speculation that the informant could testify to anything concerning the marijuana. (See *People* v. *Kilpatrick,* 31 Cal.App.3d 431, 437-438 [107 Cal.Rptr. 367].)

The order of dismissal is reversed. The trial court is directed to reinstate the charge of possession for sale of marijuana (Health & Saf. Code, § 11359) and to reinstate a reduced charge of possession of heroin (Health & Saf. Code, § 11350).

Kaus, P. J., and Hastings, J., concurred.