[Crim. No. 29357. Second Dist., Div. Five. Sept. 15, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
MANUEL MEMBERILLA ALVAREZ, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Dennis A. Fischer, Wayne Brandow and Karen M. Berlie, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**ASHBY, J.**—Defendant was charged in two counts with possession of heroin and possession of marijuana. (Health & Saf. Code, §§ 11350, 11357.) The trial court dismissed all charges upon the People's refusal to

disclose the name of the confidential informant, and the People appeal. (Pen. Code, § 1238, subd. (a)(8).)[1]

The evidence in this case was seized pursuant to a warrant authorizing the search of apartment 1 at 1027 North Ardmore in Los Angeles and the person of a male Mexican "Pelon," 5 feet 8 inches, 145 pounds, 50-55 years of age, with goatee, mustache, and numerous tattoos on the arms, legs, back and chest. Los Angeles Police Officers Whitman and Robinson executed the warrant on May 28, 1975.

When they arrived at the address, they observed a male knocking on the door to apartment 1. A female opened the door. The male asked for Pelon. The female stated, "Wait a minute," and closed the door. Within a few seconds defendant opened the door. The officers identified themselves and stated their purpose and. entered the apartment. They asked defendant if he was Pelon and he replied that he was. The female, Linda Ruiz, and another male were in the kitchen.

Officer Robinson removed from defendant's left front pants pocket a blue balloon containing heroin, item 1 in the envelope introduced as People's exhibit 1.

In a closed kitchen cabinet, Officer Whitman found a plate containing heroin, two empty balloons, one funnel, one measuring spoon, and a white powder containing lactose. The heroin was item 2 of People's exhibit 1. In another closed kitchen cabinet, he found other narcotics paraphernalia included in People's exhibit 2. In another kitchen cabinet drawer, he found a baggie containing marijuana, item 4 of People's exhibit 1. In a closet off the living room was found a receipt from Earl Scheib with a signature on the bottom, "Manuel Alvarez," and the address 1027 Ardmore.

After advice and waiver of his constitutional rights, defendant stated that he had lived at the location alone for approximately five months;

---

[1]There was a prior appeal in this case. Previously the superior court granted the defendant's motion under Penal Code section 995, on the ground that the magistrate erred in failing to require disclosure of the informant at the preliminary hearing. In an unpublished opinion the Court of Appeal reversed. (2d Crim. No. 27746.) Without reaching the question whether disclosure of the informant would be required prior to trial, the court held that the magistrate's refusal to order disclosure at the preliminary hearing was not prejudicial, since it was doubtful the defendant intended to put on a defense at the preliminary hearing or that the production of the informant would have negated probable cause.

that everything found was his; and that he did not sell heroin, he only used it.

The search warrant was based on the affidavit of Officer Whitman who declared that he had met with an informant who stated that he/she had purchased heroin from "Pelon" at 1027 North Ardmore Avenue, apartment 1, on numerous occasions in the last few months, the most recent being "seven days ago."[2] Pelon was a male Mexican, 5 feet 8 inches, 145 pounds, 50-55 years of age, with goatee and mustache and numerous tattoos on the arms, legs, back and chest. "Within the last seven days," the informant was skin searched for narcotics and monies, and given $25 and placed under surveillance. Officer Whitman observed the informant enter 1027 North Ardmore, apartment 1, and stay for 10 minutes. The informant came out and immediately returned to the police vehicle and gave Officer Whitman a blue balloon which contained a brown powder resembling heroin. The informant stated that he/she had purchased the balloon from Pelon.

### Discussion

In ordering that the People disclose the identity of the informant, the trial court found this case to be controlled by *People* v. *Borunda,* 11 Cal.3d 523 [113 Cal.Rptr. 825, 522 P.2d 1]. In that case the informant told the police he had purchased heroin from the defendant at a certain apartment on several occasions. The police searched the informant and gave him $25 in government funds. The informant entered the apartment and returned to the police without the money and with a red balloon containing heroin. The police knocked on the door and forced entry when they observed through a window defendant running toward the rear of the apartment. At a hearing on a combined motion to suppress pursuant to Penal Code section 1538.5 and to discover the identity of the informant, the police officer testified that he had found the defendant in the bathroom with the toilet being flushed and several colored balloons swirling in the bowl. The police officer's testimony was that he reached into the bowl and retrieved a plastic bag containing a green balloon containing heroin. This was the sole evidence introduced against defendant Borunda on a charge of possession of heroin. The defendant's sister gave conflicting testimony at the hearing, to the effect that the police officer emerged from the bathroom with an empty plastic bag saying, "The son of a bitch, the son of a bitch, he

[2]The affidavit and warrant were dated May 28, 1975, the same day the warrant was executed.

downed it." (*Id.* at p. 526.) In those circumstances the Supreme Court upheld the trial court's order that the informant be disclosed on the theory that if the informant testified that he had delivered a green balloon of heroin to the police officer the jury might conclude that, in light of the testimony of defendant's sister, the police officer recovered no heroin from the toilet and had instead offered in evidence the heroin which the informant had provided him. (*Id.* at pp. 527-529.)

The crucial difference between this case and *Borunda* is that here there is *no* evidence that the officer did *not* find the heroin in defendant's pocket as the officer testified. In fact, defendant admitted to the officers that everything they found was his.

■ Defendant correctly points out that he need not necessarily produce evidence at the hearing on the motion to compel disclosure, but may instead rely upon *reasonable* inferences from the People's evidence. (*People* v. *Johnson,* 13 Cal.App.3d 742, 747 [92 Cal.Rptr. 105]; *People* v. *Tolliver,* 53 Cal.App.3d 1036, 1047-1049 [125 Cal.Rptr. 905].) ■ From this, defendant leaps to the erroneous conclusion that the defense testimony in *Borunda* was not crucial to that decision and that the *Borunda* reasoning can be extended to apply to this case. To ignore the factual basis of the decision in *Borunda* would lead to absurd consequences and would in effect make it impossible to obtain a search warrant on the basis of information from an informant unless the police officer was prepared to disclose the informant's identity. "We do not attribute to the Supreme Court's opinions an intent to create such a drastic rule." (*People* v. *Kilpatrick,* 31 Cal.App.3d 431, 437 [107 Cal.Rptr. 367].) If disclosure of the informant's identity were compelled in this case, it would be compelled in almost any case where the informant made a controlled buy of heroin and the police thereafter found heroin on the defendant's person or in his apartment. It could always be contended that the police might actually have planted on the defendant the same heroin which was delivered by the informant. To compel the disclosure of the informant on such a "plant" theory in the total absence of any evidence suggesting that there was a "plant" in the particular case, would make it impossible to maintain confidentiality in any case where the police used a controlled buy in order to test the reliability of the informant. In the absence of any such evidence, the mere fact that the color of the two balloons was the same raised no reasonable inference that the police actually planted the first balloon on the defendant. The trial court erred in concluding that defendant had met his burden (*People* v. *Borunda, supra,* 11 Cal.3d 523, 527) of demonstrating a

reasonable possibility that the informant could give evidence on the issue of guilt which might result in defendant's exoneration of possessing the heroin found in his pants pocket.

■ The People contend the trial court also erred in dismissing the possession of marijuana count and the possession of heroin count to the extent that it was based on the heroin found in the kitchen rather than in defendant's pocket. With respect to this other contraband, defendant claimed at trial and reiterates on appeal that *Williams* v. *Superior Court,* 38 Cal.App.3d 412 [112 Cal.Rptr. 485], is controlling. However, in that case the informant told the police that he was present at a certain apartment on " '7-25-73 and 7-26-73 and saw a large quantity of heroin at the residence and that Nina Watson [Williams' alias] *and Eddie Anderson* were selling same. That he was present when *both* were preparing heroin in packages in order to sell same.' " (*Id.* at p. 416; italics added.) The search warrant was executed on July 26, 1973, and when they entered, police officers found a young man on a couch in the living room and the petitioner Williams as she ran from her bedroom to the living room. Heroin was found in Williams' dresser drawer amongst underclothing. The appellate court upheld Williams' contention that since the informer claimed to have seen both her and Anderson selling and packaging heroin shortly before the search and proof of her possession was circumstantial (i.e., imputed from the presence of heroin in her dresser drawer), there was a reasonable possibility the informer might testify that Williams was merely present when the informer was at the residence and that the heroin was sold, packaged, and controlled solely by Anderson during this period. (*Id.* at pp. 422-423.)

The instant case is not at all like *Williams.* Here there is no evidence the informer ever saw more than one person at the premises or in control of contraband. The informant only told the officer that he/she had purchased heroin from Pelon at the apartment.[3] Not only is there no evidence that the informant saw more than one person at the premises, there is also no indication in the record that the informant had the opportunity to see the additional heroin or marijuana, which was found in closed cabinets and drawers. Furthermore, the informant gave the police no information about marijuana. (*People* v. *Borunda,* 58 Cal.App.3d 368, 376 [129 Cal.Rptr. 923]; *People* v. *Kilpatrick, supra,* 31 Cal.App.3d 431, 438.)

---

[3]Defendant's contention that the informant might possibly say defendant was not Pelon, notwithstanding defendant's admission to the police that he was Pelon, is unsupported by anything in the record.

In *Williams* the informant had been to the apartment and had seen both occupants in possession of contraband on the same day the search occurred. In *People* v. *Martin,* 2 Cal.App.3d 121, 127 [82 Cal.Rptr. 414], on the other hand, the informant had been to the apartment three days before the police entered, and it was held there was no reasonable possibility the informant might give testimony as to who controlled the contraband in the apartment three days later. Defendant attempts to bring this case within the scope of *Williams* by arguing that it could be inferred from the record that the informant here was also at the apartment on the day of the search and therefore in a position to observe · multiple occupants. The record shows only that the informant was at the apartment "within the last seven days." This case is thus more like *Martin* than *Williams.* The inference that the informant was in the apartment shortly before the police entry in this case is so speculative that it does not rise to the level of reasonable possibility required by the cases. (*People* v. *Martin, supra* at pp. 127-128; *Williams* v. *Superior Court, supra,* 38 Cal.App.3d 412, 420-421; *People* v. *Tolliver, supra,* 53 Cal.App.3d 1036, 1048-1049; *People* v. *Borunda, supra,* 58 Cal.App.3d 368, 376.)

██ Defendant contends the prosecutor waived or conceded the issue as to the marijuana. During argument to the trial court, the prosecutor stated: "[MR. GENELIN:] First, with relationship to the Count II of the Information, marijuana, I'm not sure whether counsel has a point or not, because the material is found at other locations in the house rather than on the person of the defendant. It is conceivable that an informant could testify with relationship to that material, that it was possessed by someone else."

We do not construe this remark as a waiver. The prosecutor only said, ". . . I'm not sure whether counsel has a point or not," and that it was "conceivable" the informant could testify with relationship to that material. He was not conceding that it was a *reasonable* possibility. This is not like a case where one party's failure to object prevents the other party from introducing evidence .which would have obviated the objection had one been made. Defendant was relying solely on inferences from the prosecution evidence and counsel were only arguing a question of law.

██ We conclude that as to neither count of the information has defendant met his burden of demonstrating a reasonable possibility the informant could give evidence on the issue of guilt which might result in

defendant's exoneration. (*Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Borunda, supra,* 11 Cal.3d 523, 527.)[4]

The order of dismissal is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 10, 1977. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[4]In light of this conclusion we need not discuss the People's additional contention that the trial court erred in failing to conduct an *in camera* hearing suggested by the prosecutor. (*People* v. *Aguilera,* 61 Cal.App.3d 863, 869-871 [131 Cal.Rptr. 603].)