[Civ. No. 14291. Third Dist. Mar. 1, 1974.]

DIANE WILLIAMS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

414

**COUNSEL**

Robert N. Chargin, Public Defender, Ann M. Chargin, Assistant Public Defender, and Lawrence W. Hutchings, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye, Joel E. Carey and G. Michael Gates, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**RICHARDSON, P. J.**—Petitioner is charged by information with possession of heroin for sale (Health & Saf. Code, § 11351). The information alleges that the offense occurred on or about July 26, 1973.

Respondent superior court denied petitioner's pretrial motion to compel disclosure of the identity of an informant described in the affidavit upon which a search warrant had issued for the search of the premises where petitioner resided. Petitioner seeks herein a writ of mandate directing respondent to order such discovery. Here, as she did in the trial court,

petitioner alleges that she will be deprived of a fair trial if the informer's identity is not disclosed.

Although neither the search warrant affidavit nor the transcript of the preliminary examination was formally introduced at the hearing on the motion, petitioner's points and authorities in support of the motion incorporated the affidavit, and the transcript of the hearing affirmatively shows that the transcript of the preliminary examination was also before the trial court at the time it ruled.

The record shows that at about 9:30 p.m. on July 26, 1973, upon the basis of an affidavit executed by a Stockton police officer, a warrant was issued authorizing the search of a residence at 1728 East 11th Street in that city, as well as the search of the persons of "Nina Watson" (petitioner's alias) and one "Eddie Leroy Anderson."

In relevant part, the affidavit alleged as follows: "That your affiant is a Sergeant assigned to Metropolitan Narcotics Unit, with the specific duty to investigate narcotics violations within San Joaquin County; that during his investigations he received information that one Dianne [sic] Williams aka Nina Watson is involved in sales of heroin; from her residence at 1728 East 11th Street. [¶] That on 7-26-73 your affiant received information from a CRI [confidential reliable informant] that one Nina Watson and Eddie Anderson were dealing heroin from 1728 East 11th Street. [¶] That said informant advised your affiant that he was present at this address between 7-25-73 and 7-26-73 and saw a large quanity [sic] of heroin at the residence and that Nina Watson and Eddie Anderson were selling same. That he was present when both were preparing heroin in packages in order to sell same. [¶] That said informant is a user of narcotics and knows it [sic] appearance, physical effects and the manner in which it is packaged for sale. That based on his observations and on the conversations between himself and the two above named persons he know [sic] the substance was heroin. . . . [¶] That your affiant knows that Eddie Leroy Anderson was convicted this year of smuggling heroin by the Federal authorities and had two counts of sale of heroin pending in the Superior Court of San Joaquin County at the time of this conviction."

The warrant was executed approximately one hour after its issuance. When the searching officers approached the described residence, they observed through the front screen door a "young man" seated on a couch in the living room. The officers identified themselves to the young man and advised him that they had a search warrant. Upon hearing someone

running inside the residence, the officers opened the screen door and entered. They encountered petitioner as she ran from her bedroom into the living room.

A search of petitioner's bedroom uncovered 30 hand-rolled balloons containing heroin, which were found in a dresser drawer amongst under-clothing.[1] There were two bedrooms in the residence. Although "a lot of people . . . came through the front door" after the officers entered, peti-tioner and the young man were the only persons in the residence when the officers arrived. The record contains no express showing as to the identity of the "young man," but articles of men's clothing which "belonged to Leroy Anderson" were found in the residence along with "some personal identification" in the same name.

In a series of decisions, the California Supreme Court has enunciated the conditions under which an accused is entitled to disclosure of the identity of a confidential police informant where, as here, the accused does not seek such discovery either to establish the illegality of a search made pursuant to a warrant valid on its face or to show the inadmissibility of evidence obtained as a result of such search. (See Evid. Code, § 1042, subd. (b); *People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587].)

Some of those decisions suggest that disclosure is required when it appears from the evidence merely that the informant is a "material wit-ness" on the issue of guilt: *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33]; *Mitchell* v. *Superior Court* (1958) 50 Cal.2d 827, 829 [330 P.2d 48]; *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 751 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 851 [9 Cal. Rptr. 233, 357 P.2d 289]; *People* v. *Keener, supra,* 55 Cal.2d at p. 724; *In re Harris* (1961) 56 Cal.2d 879, 885 [16 Cal.Rptr. 889, 366 P.2d 305]; *People* v. *Perez* (1965) 62 Cal.2d 769, 773 [44 Cal.Rptr. 326, 401 P.2d 934]; *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851 [83 Cal.Rptr. 586, 464 P.2d 42]. This first group of cases further suggests that, if the informer is shown to be a material witness, it *automatically* follows that nondisclosure of his identity when sought by the defendant would deprive the defendant of a fair trial. (See *People* v. *McShann, supra,* at p. 808; *People* v. *Kiihoa, supra,* at p. 752.)

---

[1] The return to the search warrant listed additional items which were found on "the premises." However, although the return was considered by the magistrate, the record does not show that either the return or its contents were placed before re-spondent court on the discovery motion. The omission is not relevant to the issues raised by the petition.

■ Other decisions of the Supreme. Court, while quoting or citing cases from the first group, nevertheless describe a "two-pronged" test of which the fair trial element is the second prong. Decisions in this second category require disclosure "where, in view of the evidence, the informer would be a material witness on the issue of guilt *and* nondisclosure of his identity would deprive the defendant of a fair trial": *People* v. *Williams* (1958) 51 Cal.2d 355, 359 [333 P.2d 19] (italics added); *People* v. *Garcia* (1967) 67 Cal.2d 830, 839 [64 Cal.Rptr. 110, 434 P.2d 366]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 168 [74 Cal.Rptr. 233, 449 P.2d 169]; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Hunt* (1971) 4 Cal.3d 231, 239 [93 Cal.Rptr. 197, 481 P.2d 205]; *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; see also *People* v. *Goliday* (1973) 8 Cal.3d 771, 777-779, 783-784 [106 Cal.Rptr. 113, 505 P.2d 537].

■ The basic issue is one of constitutional due process (*People* v. *Goliday, supra,* 8 Cal.3d at p. 778, fn. 6; *People* v. *Garcia, supra,* 67 Cal.2d at p. 842; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 187 [23 Cal.Rptr. 375, 373 P.2d 439]; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 752) and "lies in a balance of the public interest in protecting the flow of information [to law enforcement officials] against the individual's right to prepare his defense" (*People* v. *Kiihoa, supra,* at p. 754, citing *Roviaro* v. *United States* (1957) 353 U.S. 53, 62 [1 L.Ed.2d 639, 646, 77 S.Ct. 623]; see *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 816 [330 P.2d 39]). "It has long been recognized that, although the government is generally privileged to withhold the identity of informers, the privilege *must give way* when it comes into conflict with the fundamental principle that a person accused of crime is entitled to a full and fair opportunity to defend himself." (*People* v. *Williams, supra,* 51 Cal.2d at p. 357 (italics added); see also *Roviaro* v. *United States, supra,* 353 U.S. at pp. 60-61 [1 L.Ed.2d at p. 645]; *People* v. *Castiel* (1957) 153 Cal. App.2d 653, 658 [315 P.2d 79].) "In such cases, it is clear that the 'balance' is struck in favor of the defendant, and disclosure must be ordered upon pain of dismissal." (*People* v. *Garcia, supra,* at p. 842.) "[T]he constitutional requirement of a fair trial overrides the privilege which the police might otherwise have in refusing to name their informers." (*Oceanside Union School Dist.* v. *Superior Court, supra,* at p. 187.)

■ Although this balancing aspect is more concisely reflected in the "two-pronged" test announced by our state high court, we are not of the view that the court has adopted inconsistent formulations. Many of its decisions mention "both" tests interchangeably. (See *People* v. *Garcia,*

*supra,* 67 Cal.2d at pp. 836-838; *Honore* v. *Superior Court, supra,* 70 Cal.2d at pp. 167-168; *Price* v. *Superior Court, supra,* 1 Cal.3d at pp. 842-843; *People* v. *Hunt, supra,* 4 Cal.3d at p. 239; *Theodor* v. *Superior Court, supra,* 8 Cal.3d at p. 88.) Moreover, the court has clearly defined a *single* standard which, if met, discharges the defendant's burden as to *both* elements of the "two-pronged" test. The defendant shows the existence of those elements when, based upon "some evidence" (*Price* v. *Superior Court, supra,* at p. 843), he "demonstrates a reasonable *possibility* that the anonymous informant whose identity is sought could give evidence on the issue of guilt which *might* result in defendant's exoneration" (*People* v. *Garcia, supra,* at p. 840 (italics added)). (See also *Theodor* v. *Superior Court, supra,* at p. 88.)

The latter standard is one which safeguards "the individual's right to *prepare* his defense" (*People* v. *Kiihoa, supra,* 53 Cal.2d at p. 754 (italics added)) and compensates for "the difficult problem of a defendant who is unaware of the information which might be supplied by the unnamed informer" (*Price* v. *Superior Court, supra,* 1 Cal.3d at p. 843).

Inherent in the Supreme Court's formulation is the concept that a defendant seeking disclosure is not bound by police allegations that the informer *inculpated* the defendant. The rationale of the rule requiring disclosure "is that the defendant, through the testimony of the informer when his identity is made known, *might* be able to rebut a material element of the prosecution's case and thereby prove his innocence. The denial by the prosecution of an opportunity for the defendant to *seek out* the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law." (*People* v. *Kiihoa, supra,* 53 Cal. 2d at p. 752.) (Italics added.) "The defendant is entitled as a matter of due process of law to be allowed to interview and produce any witness who might give evidence favorable to his defense . . . ." (*People* v. *Castiel, supra,* 153 Cal.App.2d at p. 657.) "No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. It is the deprival of the defendants of the opportunity of producing evidence which *might* result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors." (*Id.* at p. 659 (original italics), quoted in *People* v. *Garcia, supra,* 67 Cal.2d at p. 840.)

In *People* v. *Goliday, supra,* 8 Cal.3d at page 778, the court said, "We

*need not speculate* about what [two informers] might have revealed as witnesses; an accused need show only a possibility that a material witness might testify favorably on his behalf; a defendant 'need not prove conclusively before disclosure the very fact [he] seek[s] to obtain through disclosure.' [Citations.]" (Italics added.) Yet the *Goliday* court, in determining that the prosecution had a duty of disclosure, *did in fact speculate* that "the two informers might have supported the defendant's plea of innocence to the sale counts by testifying that the defendant declined to sell restricted drugs to [the officer]." (*Id.* at pp. 778-779.) Moreover, when looking back upon *People v. Garcia, supra,* 67 Cal.2d 830, in which a judgment of conviction was reversed because of nondisclosure of the identities of informants referred to in a search warrant affidavit, a unanimous Supreme Court has later acknowledged that "in *Garcia* we *could only speculate* that [the informers] had . . . information" bearing on the issue of guilt. (*People v. Hunt, supra,* 4 Cal.3d at p. 240.) (Italics added.)

It seems, accordingly, to some degree, speculation may properly play a part in the application of a standard which is couched in terms of a reasonable "possibility" that the undisclosed informant could give evidence which "might" result in the defendant's exoneration (*People v. Garcia, supra,* 67 Cal.2d at p. 840). ■ Where the evidence indicates that the informer was an actual participant in the crime alleged, or was a nonparticipating eyewitness to that offense, ipso facto it is held he would be a material witness on the issue of guilt and nondisclosure would deprive the defendant of a fair trial. In such circumstances, the possible nature of the informer's testimony is nonetheless speculative; but, under the Supreme Court expressions above noted, the proximity in time and space of the informer's relationship to the alleged crime readily tips the scales against the public interest in protecting the flow of information to law enforcement officials. (See *Roviaro v. United States, supra,* 353 U.S. at pp. 63-64 [1 L.Ed.2d at p. 647]; *People v. McShann, supra,* 50 Cal.2d at pp. 806, 808; *People v. Williams, supra,* 51 Cal.2d at pp. 358-360; *People v. Kiihoa, supra,* 53 Cal.2d at pp. 750-751; *People v. Hammond, supra,* 54 Cal.2d at pp. 849-850; *People v. Garcia, supra,* at p. 837; *Price v. Superior Court, supra,* 1 Cal.3d at pp. 842-843; *Eleazer v. Superior Court, supra,* 1 Cal.3d at p. 851; *People v. Goliday, supra,* 8 Cal.3d at p. 778; *People v. Castiel, supra,* 153 Cal.App.2d at pp. 656-658.)

However, when the informer is shown to have been neither a participant in nor a nonparticipant eyewitness to the charged offense, the possibility that he could give evidence which might exonerate the defendant is even more speculative and, hence, may become an unreasonable possibility.

If disclosure were compelled regardless of the degree of attenuation which marked the informer's nexus with the crime, "[t]he result . . . would be to make it impossible to obtain a search warrant on the basis of information from a reliable informant unless the police officer was prepared to disclose the informant's identity" (*People* v. *Kilpatrick* (1973) 31 Cal. App.3d 431, 437 [107 Cal.Rptr. 367]).

■ The state Supreme Court has nonetheless made it clear that the defendant seeking disclosure of an informer's identity "need not prove . . . that the informer was a participant in or even an eyewitness to the crime." (*Price* v. *Superior Court, supra,* 1 Cal.3d at p. 843.) As was said in *Honore* v. *Superior Court, supra,* 70 Cal.2d at page 169, "in order to compel disclosure of the informant, there is no requirement that the latter must have given the police information about the very crime charged. All that is necessary is that he be a material witness on the issue of *defendants' guilt of the crime charged.*" (Original italics.) In *People* v. *Garcia, supra,* 67 Cal.2d at page 837, the court stressed that "a nonparticipant informant can be a material witness whose identity must be disclosed upon proper demand *even when such informant was not an eyewitness to the alleged criminal act.*" (Original italics.)

Since speculation concerning the informer's possible testimony can be as wide-ranging as the ingenuity of defense counsel, disclosure in the case of the nonparticipating noneyewitness informer necessarily depends on the evidentiary showing made concerning the informer's relationship to the alleged crime. "The words 'might' and 'possibility' [in the Supreme Court's standard] have vague and almost limitless perimeters that must be determined on a case-by-case basis and on review great weight should be afforded the trial court's determination." (*People* v. *Kilpatrick, supra,* 31 Cal.App.3d at p. 437; cf., *Roviaro* v. *United States, supra,* 353 U.S. at p. 62 [1 L.Ed.2d at p. 646].) The matter before us, however, is controlled by prior decisions of our state Supreme Court, which leave no room for discretion. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ The elements of the crime of possession of heroin for sale are (1) actual or constructive possession of the narcotic (2) for the purpose or intent of selling it, with (3) knowledge of its presence and (4) knowledge of its narcotic character. (See *People* v. *Newman* (1971) 5 Cal.3d 48, 52-53 [95 Cal.Rptr. 12, 484 P.2d 1356]; *Weber* v. *Superior Court* (1973) 30 Cal.App.3d 810, 815 [106 Cal.Rptr. 593]; *People* v. *Archuleta* (1971) 16 Cal.App.3d 295, 298 [93 Cal.Rptr. 881]; *People* v. *Bravo* (1965) 237 Cal.App.2d 459, 461 [46 Cal.Rptr. 921].)

■ " 'The accused has constructive possession when he maintains control or a right to control the contraband.' [Citation.] 'Possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to his dominion and control' [citation] or which is subject to the joint dominion and control of the accused and another [citations]." (*People* v. *Francis* (1969) 71 Cal.2d 66, 71 [75 Cal.Rptr. 199, 450 P.2d 591].) However, "[w]hen contraband is found in a place to which a defendant and others have access and over which none has exclusive control 'no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic. . . .' [Citation.]" (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 345 [78 Cal.Rptr. 196, 455 P.2d 132].) "[P]roof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (*People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].)

■ In the matter before us, the trial court ruled on petitioner's motion prior to the entry of her plea, and the record does not indicate whether her plea has yet been entered. Neither here nor in the trial court has petitioner directly alleged that Eddie Leroy Anderson was the sole possessor of the heroin found in her bedroom. The record does not show whether Anderson was charged. Petitioner denies in this writ proceeding, however, that she had any actual or constructive possession of the contraband, or that she knew of its presence and nature, or that she had the requisite intent to sell.

Petitioner argued to the trial court, as she does here, that her right to discovery arises from the evidence that the informer claimed to have seen both her *and Anderson* selling and packaging heroin shortly before the search, and from the fact that proof of her possession was circumstantial (i.e., imputed from the presence of heroin in her dresser drawer). Petitioner contends here, as she did before the trial court, that it is reasonably possible that the informer might testify that petitioner was merely present when the informer was at the residence; the informer's testimony might show that the heroin was sold, packaged, and controlled solely by Anderson during this period; and, from such testimony, the trier of fact might infer that petitioner had no control or right to control the heroin later found in her dresser, and that she herself had no intent to sell contraband.

While we might hold otherwise were this a matter of first impression, prior decisions of the state Supreme Court involving constructive posses-

sion require that petitioner's contention be upheld. Where possession of contraband is among the elements of the crime charged and it is imputed to the defendant by reason of the location at which the contraband is discovered by the police, and where such discovery stems in whole or part from an informer's very recent observation of contraband on those same premises, the Supreme Court has compelled disclosure of the informer's identity if the evidence shows that persons other than the defendant were on the premises when the informer observed the contraband and that the defendant was not then present or may not have been present (*People* v. *Garcia, supra,* 67 Cal.2d 830; *Honore* v. *Superior Court, supra,* 70 Cal.2d 162 & fn. 3 (re defendant Honore); cf., *Theodor* v. *Superior Court, supra,* 8 Cal.3d at pp. 82-83, 89-90; *People* v. *Hunt, supra,* 4 Cal.3d 231), or *if the record is silent* as to whether the defendant was present (*Honore* v. *Superior Court, supra,* 70 Cal.2d 162 & fn. 3 (re defendant Newman)).

A higher court having spoken, we cannot deny petitioner the benefit of the latter holdings simply because the evidence—here, the search warrant affidavit (*People* v. *Garcia, supra,* 67 Cal.2d at p. 839, fn. 10)—was uncontroverted and indicates that the informer observed her exercising joint control of the heroin. To deny petitioner that benefit would be inconsistent with Supreme Court decisions which speculate that the *informer might* exculpate the defendant where (1) the informer was a participant in or a nonparticipant eyewitness to the charged offense and all the evidence *inculpates* the defendant (*Price* v. *Superior Court, supra,* 1 Cal.3d 836; *Eleazer* v. *Superior Court, supra,* 1 Cal.3d at pp. 849-851; *People* v. *Goliday, supra,* 8 Cal.3d at pp. 775, 778-779; see *People* v. *Hammond, supra,* 54 Cal.2d at pp. 848-851), or where (2) the informer was a nonparticipant noneyewitness to the alleged crime and the record is silent as to the defendant's presence at the time of the informer's prior observations (*Honore* v. *Superior Court, supra,* 70 Cal.2d 162 & fn. 3 (re defendant Newman)).

As previously stated, the evidentiary showing required by those decisions is not as to the exculpatory nature of the informer's potential testimony but merely as to the quality of the vantage point from which the informer viewed either the commission or the immediate antecedents of the alleged crime. The noted Supreme Court cases ask in effect, "What was the informer *in a position* to perceive?" If the evidence shows that the informer had a sufficiently proximate vantage point, those Supreme Court decisions simply speculate concerning the informer's potential testimony and hold that the defendant has demonstrated a reasonable possibility that

the informant could give evidence which might result in the defendant's exoneration. Speculation as to such an informer's testimony is consistent with cases which discern a constitutional right in the accused to seek out the informer to inquire what he knows. (See *People* v. *Garcia, supra,* 67 Cal.2d at p. 840; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 752; *People* v. *Castiel, supra,* 153 Cal.App.2d at p. 657.)

The Attorney General's reliance on *People* v. *Goliday, supra,* 8 Cal.3d 771, *People* v. *Hambarian* (1973) 31 Cal.App.3d 643 [107 Cal.Rptr. 878], and *People* v. *Kilpatrick, supra,* 31 Cal.App.3d 431, is without avail. In *Goliday,* in which the high court affirmed convictions for two counts of possession for sale of restricted drugs, nothing in the opinion indicates that the defendant urged disclosure on the ground that other persons in his apartment might possibly be shown to have had exclusive possession of the contraband. (8 Cal.3d at pp. 775, 783-784.) In *Hambarian,* the court distinguished pretrial review of disclosure motions from post-conviction review of such motions (as in *Goliday*) in cases involving nonparticipant noneyewitness informers, and *Hambarian* also pointed out that the defendant there had contended in the trial court merely that the informer's testimony might show the defendant's possession " 'was not exclusive.' " As *Hambarian* noted, "a showing of nonexclusive possession would not exonerate defendant." (31 Cal.App.3d at pp. 657-662.) *Kilpatrick* was likewise a post-conviction decision. (31 Cal.App.3d at p. 438.)

Nor is the Attorney General's citation of *People* v. *Acuna* (1973) 35 Cal.App.3d 987 [111 Cal.Rptr. 878], in point. Although the informer there was neither a participant in nor an eyewitness to the alleged crime, the *Acuna* case did not involve constructive possession. As the court there emphasized, defendant Acuna "had actual personal possession of the contraband" found in a pocket of the pants he was wearing when searched, and "the sole basis of defendant's violation [was] the heroin in the three balloons found in his pocket." (*Id.* at p. 991.)

In our consideration of the case at bench, we have found no substantial conflict in the Supreme Court's various expressions of the formula which underlies disclosure of the informer; and, more importantly, we have been required to ascertain the nature of the evidentiary showing which that court has *consistently* demanded for application of that formula. Those standards must be guardedly applied, lest the public interest in protecting the flow of covert information to the police be frustrated in all cases except those where the information is so remote as to be of no practical utility. However, as an intermediate appellate court bound by the Supreme Court's pronouncements (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d

at p. 455), we are compelled in the instant case to conclude that respondent court erred in refusing to order the prosecution to disclose the identity of the informant.

At the hearing on petitioner's motion to compel disclosure, the prosecutor did not request the trial court to hold an *in camera* hearing pursuant to Evidence Code section 1042, subdivision (d). The Attorney General now contends that, if disclosure was erroneously denied, we must remand the matter to the trial court in order to afford the prosecution "an opportunity to exercise its statutory right to request an *in camera* hearing." The contention fails. The prosecution has already had that opportunity. Nothing in section 1042, subdivision (d), supports the Attorney General's premise that the People's right to request an *in camera* hearing arises only after the trial court has first found that a prima facie case for disclosure has been made by the defendant. Subdivision (d) expressly provides that the very purpose of the *in camera* hearing is "to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." Carried to its logical extreme, the Attorney General's contention would require the appellate court to entertain two successive mandate proceedings to test the denial of disclosure in cases such as this, if, upon remand, the trial court held an *in camera* hearing and adhered to its prior decision. Such a duplication of effort at both the trial and appellate levels cannot have been within the intent of the Legislature when it enacted subdivision (d).

Let a peremptory writ of mandate issue directing respondent superior court to order the People to disclose the identity of the informer within a reasonable time to be fixed by respondent on penalty of dismissal if respondent's order is not complied with. The temporary stay herein is terminated upon service of the writ.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied March 29, 1974, and the petition of the real party in interest for a hearing by the Supreme Court was denied May 1, 1974.