[Crim. No. 16328. First Dist., Div. Three. Mar. 30, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
KING McCARTHY et al., Defendants and Appellants.

---

COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Philip A. Schnayerson and Philip M. Brooks, Deputy State Public Defenders, Jan O. Werner and Michael Stepanian for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and J. Patrick Collins, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

ABBE, J.*—Appellants have appealed their convictions of possession of over one-half ounce of heroin on the ground that the identity of an informant was improperly withheld and that a search warrant had become stale.

On January 23, 1976, an Oakland police officer, Gary Haywood, obtained a search warrant authorizing the search of the person of Dorothy McCarthy and the premises of 866 30th Street, Oakland, California. The warrant was served on January 27, 1976.

When Officer Haywood arrived at the house on 866 30th Street, he knocked and in response to a male voice who asked, "[w]ho is it," he stated, "the police with a search warrant, '[o]pen the door immediately.'" The officer then heard a male voice in the house state, "[i]t is the police" and footsteps running away from the door. He yelled again that he was a police officer with a search warrant and demanded the door be opened. He waited about five seconds and then, fearing that any contraband inside the residence would be destroyed, forced the door open. Upon entering, the officer observed appellant Richard Neal, whom

---

*Assigned by the Chairperson of the Judicial Council.

he recognized from prior occasions, moving forward to the rear of the house. He pursued Mr. Neal into the bathroom where he saw him bending over the toilet bowl with his hands inside the bowl. Appellant Albert Buggs was also in the bathroom bent over the bowl with his hands inside the bowl. As Officer Haywood entered the bathroom he yelled, "Freeze," but Mr. Buggs broke a window and attempted to escape. A police officer stationed at the rear of the house ordered Mr. Buggs back in the window.

Officer Haywood recovered two plastic bags from the toilet bowl that he believed contained heroin. It was stipulated that the material seized by Officer Haywood from the toilet bowl was 33 percent heroin and weighed approximately 12 ounces.

Officer Haywood took Albert Buggs and Richard Neal to the kitchen, where defendant Letha Sheppard and appellant King McCarthy were already in custody. When arrested, King McCarthy was simply standing in the kitchen, facing the table with his back to the approaching officers. On the kitchen table were a mirror, two syringes with needles, balloons, strainers, measuring spoons, a playing card, and some lactose. A set of scales was found on the kitchen floor near the table. Defendant Sheppard had six balloons of suspected narcotics in her shoe. Appellant McCarthy had no contraband in his personal possession.

An interim driver's license bearing the name of King McCarthy and the address of 866 30th Street was found on top of a dresser in the front bedroom of the house, and another document bearing his name was found in the second drawer. The officers also found, in various areas of the house, a methadone card bearing the name of Dorothy McDaniels; a Sears receipt bearing the name Dorothy McCarthy and the address 866 30th Street; a Medi-Cal index card bearing the name Thelma McCarthy and Dorothy McDaniels and the address 866 30th Street; and a Pacific Telephone Company letter addressed to Marilyn McCarthy at 866 30th Street.

By information filed May 5, 1976, appellants were charged with violation of Health and Safety Code section 11351 (possession of heroin for sale).

Appellants moved to dismiss the information pursuant to Penal Code section 995, to suppress evidence pursuant to Penal Code section 1538.5, and to disclose the identity of the informant. All these motions were

552

denied. A jury trial began on September 30, 1976, and the appellants were found guilty.

■ The motions under Penal Code sections 995 and 1538.5 were based on the ground that the warrant had not been served within a reasonable time after it had been issued and that the reason for the delay in the execution of the warrant was to wait until there were several people in the residence so that the officer could make many arrests.

Section 1534 of the Penal Code provides that a warrant executed within 10 days is deemed to be timely executed. In *People v. Hernandez* (1974) 43 Cal.App.3d 581, 590 [118 Cal.Rptr. 53], the court indicated that the defendant has the burden to show that a warrant served within 10 days is not timely. We must accept the factual finding of the trial court as it was clearly supported by substantial evidence. (*People v. Manning* (1973) 33 Cal.App.3d 586, 599 [109 Cal.Rptr. 531].)

■ The search warrant was issued on the basis of the affidavit of Officer Haywood which recited that a reliable informant, referred to as "X," had been present at the house at 866 30th Street on January 21, 1976, and had seen Dorothy McCarthy in possession of 15 "Fifty dollar bags" of heroin, that she had procured this heroin from an enclosed porch area at the rear of the house and that also present in the house at that time was a male named King McCarthy.

With regard to the motion to disclose the informer's identity, King McCarthy argued that the informant might be able to establish that Dorothy McCarthy had exclusive dominion and control over the heroin during the incident described in the search warrant affidavit. This would support King McCarthy's argument that he was not in constructive possession of any of the heroin which was seized at his home. Albert Buggs and Richard Neal argue that the informer might be useful in establishing their defense, under *People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], that they were merely heroin users, momentarily in possession of the heroin for the purpose of disposing of it.

The prosecutor's request for an *in camera* hearing pursuant to Evidence Code section 1042, subdivision (d) was granted by the trial judge. After hearing the testimony under oath of the informer, the trial court decided not to disclose the identity of the informer. This court has examined the testimony presented at the *in camera* hearing. The

testimony of the informant was not in any way exculpatory but was very incriminatory.

■ Appellants contend that the court must disclose the identity of an informer who was a material witness on the issue of guilt, regardless of whether the informer's testimony would incriminate or exculpate a defendant in a criminal action. We disagree.

When a defendant seeks information which might lead to the disclosure of the identity of a confidential informant, the public entity is entitled to invoke the privilege of nondisclosure of the identity of an informer under Evidence Code section 1041. Once that privilege has been invoked, a hearing is held with defendant and his counsel present to determine whether the informer might be a material witness on the issue of guilt. (See *People* v. *Coleman* (1977) 72 Cal.App.3d 287, 295 [139 Cal.Rptr. 908].) In 1969, the Legislature added subdivision (d) to Evidence Code section 1042, providing that the prosecution may request an *in camera* hearing on the issue of disclosure of identity.

Appellants rely on *People* v. *Coleman, supra,* 72 Cal.App.3d 287 for the proposition that the amendment which added subdivision (d) to section 1042 did not change the standard for disclosure. The court in *Coleman* states: " 'Since the crucial question as to disclosure is whether the informant could give testimony on the issue of guilt which would exonerate the defendant, the procedure contained in [subdivision (d) of section 1042] is highly advantageous and provides a method of eliminating the "guessing game" qualities which have often attended these determinations. [Citation.] It allows the prosecutor to produce the informant *in camera* so that the court can determine just what the informant knows, and whether this testimony would be material on the issue of guilt.If his testimony at the *in camera* hearing shows that there is no reasonable possibility the informant could aid the defense, the public interest in nondisclosure of his identity can be preserved without any infringement on the defendant's right to a fair trial. [Citations.]' (*People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 868-869 [131 Cal.Rptr. 603]; see Brenner, *In Camera Hearings on Informant Disclosure,* 15 Santa Clara Law. 326; Note, *Non-Disclosure of the Informant's Identity,* 1 Pacific L.J. 610.)" (*People* v. *Coleman, supra,* 72 Cal.App.3d 287, 297; accord: *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]; *People* v. *Brownlee* (1977) 74 Cal.App.3d 921, 930 [141 Cal.Rptr. 685]; *People* v. *Alvarez* (1977) 73 Cal.App.3d 401, 406-407 [141 Cal.Rptr. 1].)

We find no support in the *Coleman* case for appellants' contention that the identity of an informant must be disclosed where the only material testimony on the issue of guilt which the informer could give would be incriminating.

■ Likewise, we find appellants' reliance on *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 423 [112 Cal.Rptr. 485], to be misplaced. Appellants refer us to the following quotation from *Williams:* "As previously stated, the evidentiary showing required by those decisions is not as to the exculpatory nature of the informer's potential testimony but merely as to the quality of the vantage point from which the informer viewed either the commission or the immediate antecedents of the alleged crime. The noted Supreme Court cases ask in effect, 'What was the informer *in a position* to perceive?' If the evidence shows that the informer had a sufficiently proximate vantage point, those Supreme Court decisions simply speculate concerning the informer's potential testimony and hold that the defendant has demonstrated a reasonable possibility that the informant could give evidence which might result in the defendant's exoneration. Speculation as to such an informer's testimony is consistent with cases which discern a constitutional right in the accused to seek out the informer to inquire what he knows. (See *People* v. *Garcia, supra,* 67 Cal.2d at p. 840 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Kiihoa, supra,* 53 Cal.2d at p. 752 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Castiel, supra,* 153 Cal.App.2d at p. 657 [315 P.2d 79].)" (*Williams, supra,* 38 Cal.App.3d at pp. 423-424.)

Although this quotation seems at first glance to support appellants' position, the language in that case and the Supreme Court cases cited therein, refer to the showing a defendant must make to overcome the claim of privilege in section 1041. (See also: *People* v. *Tolliver* (1975) 53 Cal.App.3d 1036 [125 Cal.Rptr. 905].) Neither *Williams,* nor any of the cases relied upon in *Williams,* involved an *in camera* hearing under section 1042, subdivision (d), where the identity of an informer who could give material testimony on the issue of guilt was not disclosed because this testimony could not aid the defense. Rather, these cases involved situations where the informer had not been examined. Under such circumstances the defendant could not be expected to do more than speculate as to the possible testimony of one with the informer's vantage point.

" '[A] defendant seeking to discover the identity of an informant bears the burden of demonstrating that, "in view of the evidence, the informer

would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial." [Citations.] That burden is discharged, however, when defendant demonstrates *a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration.' (People* v. *Garcia* (1967) 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366], italics added, fn. omitted.)" (See *People* v. *Borunda, supra,* 11 Cal.3d at p. 527.)

Where no *in camera* hearing has been held, the lack of knowledge of the informer's testimony requires a disclosure of his identity or a dismissal of the case. (*People* v. *Borunda, supra,* 11 Cal.3d 523.)

■ However, when an *in camera* hearing has been held and the trial court has reasonably concluded, as in the instant case, that the informant does not have knowledge of facts that would tend to exculpate the defendant, disclosure of the identity of the informer is prohibited by Evidence Code section 1042, subdivision (d), since the public entity has invoked the privilege pursuant to section 1041.

■ In the instant case, the trial court properly determined that there was no reasonable possibility that nondisclosure might deprive any of the appellants of a fair trial. It was not error to deny appellants' request for disclosure.

Judgments are affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

The petition of appellants McCarthy and Buggs for a hearing by the Supreme Court was denied May 25, 1978.