Filed 5/24/23

# CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS RYAN SCOTT,<br><br>        Defendant and Appellant. | E078721<br><br>(Super.Ct.No. RIF1604645)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. Matthew C. Perantoni, Judge. Affirmed with directions.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, III, and V.

1

During a confrontation with three strangers, defendant Thomas Ryan Scott shot one of them, killing him.  As a result, he was convicted of voluntary manslaughter, with various enhancements and one "strike" prior felony conviction.

Defendant contends, among other things, that there was insufficient evidence that his prior conviction violated Penal Code section 186.22,[1] as amended effective January 1, 2022, and therefore there was insufficient evidence that it was a strike.  In the published portion of this opinion, we will hold that, because the prior was a strike on the date of the conviction, it remains a strike, regardless of the amendments to section 186.22.  In the nonpublished portion of this opinion, we will hold that there is an error in the abstract of judgment, which must be corrected, but no other error requiring reversal.

I

STATEMENT OF FACTS

The underlying facts are not particularly relevant to defendant's appellate contentions.  We set them forth briefly here as background.  We take them from the parties' representations in their briefs, rather than from the record.

On August 28, 2016, around 1:00 a.m., Luis Quintanar and two of his friends encountered another man in a church parking lot in Riverside.  Quintanar asked, "What's up, G?"  The man started arguing with Quintanar.  Quintanar (who was holding a skateboard) tried to calm the man down.  However, the man pulled out a gun and fired one shot into the air.  Quintanar called him a bitch and raised his hands — perhaps

_____

[1]      All further statutory citations are to the Penal Code, unless otherwise stated.

starting to hold them up, or perhaps reaching for the gun. The man shot Quintanar once in the chest, killing him.

When Detective Michael O'Boyle interviewed defendant, defendant initially denied being present. However after Detective O'Boyle suggested that the shooting might have been in self-defense, defendant changed his story. He said Quintanar's group demanded "weed" from him. One of them pushed him, and Quintanar hit him with a skateboard. Defendant fired one shot in the air. One of the men grabbed for the gun, and "BOOM it went off." He characterized the shooting as self-defense. In jailhouse phone calls to his brother and sister, defendant likewise said he acted in self-defense.

At trial, defendant once again denied being present; he testified that his confession was false. One Cheryl Marrow, an old friend of defendant, testified that her boyfriend Thomas Keenan was the shooter.

II

STATEMENT OF THE CASE

In a jury trial, which he defended in propria persona, defendant was found guilty of voluntary manslaughter (§ 192, subd. (a)), with a personal firearm use enhancement (§ 12022.5, subd. (a)), and of unlawful possession of a firearm (§ 29800, subd. (a)(1)).

Defendant admitted one strike prior. (§§ 667, subds. (b)-(i), 1170.12.) He also admitted one prior serious felony conviction enhancement (§ 667, subd. (a)) and one prior prison term enhancement (§ 667.5, subd. (b)), but the trial court dismissed these at sentencing. He was sentenced to a total of 33 years four months in prison.

3

## III

## THE CONFIDENTIAL INFORMANT

Defendant contends that the trial court erred by denying his motion for disclosure of the identity of a confidential informant.

A.  *Additional Factual and Procedural Background.*

Defendant made an informal request for discovery, including discovery of "the identity and whereabouts of any material informants . . . ."

In its response, the prosecution stated:  "[T]he People are in possession of information received from a confidential informant and do not intend on discovering the identity of the confidential informant or the information received from the informant. The People rely on Evidence Code § 1041 and § 1042 and are hereby invoking the privileges provided in those [E]vidence [C]ode sections."

Defendant filed a motion to compel discovery of all items specified in the informal request that had not been disclosed.  Once again, the prosecution responded that it had a confidential informant and was refusing to disclose the informant's identity, citing Evidence Code sections 1041 and 1042.  It concluded:  "We ask that the court conduct an in camera hearing . . . ."  Defendant then requested that the informant testify at the in camera hearing and that he be allowed to submit written questions to the informant.

The trial court held an in camera hearing. The prosecutor was present; defendant was not. The only witness was the primary investigator, Detective O'Boyle.[2] Implicitly, then, the trial court denied defendant's request that the informant testify.

After the in camera hearing, the trial court denied the motion to compel and sealed the transcript of the hearing. It ruled that the informant's information was not exculpatory and was not material.

B. *Discussion*.

A public entity has a privilege to refuse to disclose the identity of a confidential informant, when "the necessity for preserving the confidentiality of his or her identity outweighs the necessity for disclosure in the interest of justice." (Evid. Code, § 1041, subd, (a)(2); see also *id*., subd. (b).)

The trial court can resolve a dispute over the disclosure of a confidential informant's identity at an in camera hearing outside the presence of the defendant and defense counsel. (Evid. Code, § 1042, subd. (d).) The issue at the hearing is "whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (*Ibid*.) This, in turn, "will depend in large part on whether the informant is a

---

[2] The only exhibit was an email. The trial court ordered the email sealed.

Defendant is on notice of the existence of the email from the minute order in the clerk's transcript. Also, in their respondent's brief, the People noted that the trial court considered the email and ordered it sealed. Nevertheless, defendant has not requested the transmission of this exhibit. (Cal. Rules of Court, rules 8.224, 8.320(e).) Thus, he cannot claim that the email is necessary to our review.

5

potential material witness on the issue of guilt." (*People v. Hobbs* (1994) 7 Cal.4th 948, 959; see also Evid. Code, § 1042, subd. (d).)

"The confidential informant's presence is not required at the in camera hearing. [Citations.]" (*Davis v. Superior Court* (2010) 186 Cal.App.4th 1272, 1277-1278; accord, *People v. Fried* (1989) 214 Cal.App.3d 1309, 1313-1314; *People v. Alderrou* (1987) 191 Cal.App.3d 1074, 1079-1080; *People v. Lee* (1985) 164 Cal.App.3d 830, 839.)

"We review the trial court's ruling concerning the disclosure of the identity of a confidential informant under the abuse of discretion standard. [Citation.]" (*Davis v. Superior Court*, *supra*, 186 Cal.App.4th at p. 1277) "[W]hen an *in camera* hearing has been held and the trial court has reasonably concluded . . . that the informant does not have knowledge of facts that would tend to exculpate the defendant, disclosure of the identity of the informer is prohibited . . . ." (*People v. McCarthy* (1978) 79 Cal.App.3d 547, 555; accord, *Davis v. Superior Court*, *supra*, 186 Cal.App.4th at p. 1277 ["disclosure occurs only if the defendant makes an adequate showing that the informant can give exculpatory evidence."].)

Defendant asks us to review the sealed materials independently. (See *People v. Parker* (2022) 13 Cal.5th 1, 33 ["We review independently any 'records that remain sealed and to which defendant does not have access'"].) Specifically, he asks us to review "(1) whether testimony was taken under oath, (2) whether the evidence presented was sufficient to determine whether the evidence at issue was material, (3) whether the trial court erred in failing to require the sworn testimony of the confidential informant,

6

and (4) whether the trial court erred in refusing the defense request to submit questions to the confidential informant."[3]

Detective O'Boyle was duly sworn. (See Code Civ. Proc., §§ 2093, subd. (a), 2094.) There was substantial evidence of a need to keep the informant's identity confidential. The trial court, with the prosecutor's assistance, conducted a sufficiently searching inquiry. The evidence showed that the informant's information was substantially similar to two anonymous tips that the police had previously received and that the prosecution had previously produced to defendant in discovery. Based on those tips, the police had already scheduled a parole search of defendant's home. Thus, the evidence indicated that the informant had no exculpatory information.

It did not appear that the informant was a percipient witness in any way. (Cf. *People v. Ruiz* (1992) 9 Cal.App.4th 1485, 1489 ["the [informant]'s in camera testimony was essential in this case because defendant had established the [informant] was an eyewitness to the alleged drug transaction"].) Even if the informant had testified, and even if defendant had been allowed to question the informant, there is no reason to suppose the informant would have added anything to the evidence already before the trial court.

Thus, the trial court did not abuse its discretion by refusing to let defendant examine the informant and by denying the motion to disclose the informant's identity.

---

**3** Defendant does not complain of his inability to submit questions to Detective O'Boyle.

7

IV

THE EFFECT OF AMENDMENTS TO SECTION 186.22

ON DEFENDANT'S ALLEGED STRIKE PRIOR

Defendant's 2009 conviction for unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a)) was a strike only because a gang enhancement (§ 186.22, subd. (b)) was found true.  (See §§ 667, subd. (d)(1), 667.5, subd. (c), 1192.7, subd. (c).) Effective January 1, 2022, the Legislature amended section 186.22.  (Stats. 2021, ch. 699, § 3.)  Defendant contends that, under section 186.22, as amended, there is insufficient evidence that his 2009 conviction was a strike.

"[A]ny felony offense, which would also constitute a felony violation of Section 186.22," is a strike.  (§ 1192.7, subd. (c)(28).)  This "includes 'any felony offense' that was committed for the benefit of a criminal street gang within the meaning of section 186.22(b)(1)."  (*People v. Briceno* (2004) 34 Cal.4th 451, 456; see also *id*. at pp. 458-465.)  Thus, at the time, in 2009, the true finding on the gang enhancement (former § 186.22, subd. (b)) established that the underlying crime was a strike.

Assembly Bill No. 333 (2021-2022 Reg. Sess.) made a number of amendments to section 186.22, effective January 1, 2022.  "First, Assembly Bill 333 'narrows the definition of "'criminal street gang'" to "an *ongoing, organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have

8

engaged in, a pattern of criminal gang activity." [Citation.]' [Citation.]" (*People v. Renteria* (2022) 13 Cal.5th 951, 961, fn. 6.)

Second "'imposition of a gang enhancement requires proof of the following additional requirements with respect to predicate offenses: (1) the offenses must have "commonly benefited a criminal street gang" where the "common benefit . . . is more than reputational"; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense cannot be used as a predicate offense. [Citation.] With respect to common benefit, the new legislation explains: "[T]o benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." [Citation.]' [Citation.]" (*People v. Ramirez* (2022) 79 Cal.App.5th 48, 63, review granted Aug. 17, 2022, S275341.)

Third, Assembly Bill No. 333 "also includes a provision stating that, as used in [section 186.22], 'to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang

rival, or intimidation or silencing of a potential current or previous witness or informant.' [Citation.]" (*People v. Renteria*, *supra*, 13 Cal.5th at p. 561, fn. 6.)

Because Assembly Bill No. 333 is ameliorative legislation, it applies to all convictions not yet final on its effective date. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206.) The true finding on defendant's strike prior is not yet final. In his view, then, whether the prior violated section 186.22 — and hence whether it constitutes a strike — must be evaluated under section 186.22 as amended by Assembly Bill No. 333.

Defendant admitted the strike prior below. Ordinarily, such an admission is conclusive and forfeits any challenge to the sufficiency of the evidence. (*People v. Lobaugh* (1987) 188 Cal.App.3d 780, 785.) Defendant argues that "[t]he changes in the law render appellant's admission to the 2009 conviction inconclusive on its face as to whether it qualifies as a . . . strike prior." However, he made the admission on February 2, 2022, when Assembly Bill No. 333 was already in effect. He also suggests that he merely admitted that he suffered the conviction and did not admit its legal effect as a strike. However, he specifically said, "I admit the strike prior." Therefore, he cannot challenge the sufficiency of the evidence of the strike.

Separately and alternatively, however, we also reject defendant's present contention on the merits.

The three strikes law provides: "Notwithstanding any other law . . . : [¶] . . . The determination of whether a prior conviction is a prior serious or violent felony conviction for purposes of this section shall be made upon the date of that prior conviction . . . ."

10

(§ 1170.12, subd. (b)(1); accord, § 667, subd. (d)(1).) In other words, "the Legislature intended that the qualifying status of a conviction would be *fixed* upon the date of the prior conviction . . . ." (*People v. Anderson* (1995) 35 Cal.App.4th 587, 600, italics added.) This "mean[s] that the court is presently required to look backward to see if, at the time of the conviction of the past offense, such past offense qualified as a serious or violent offense . . . ." (*People v. Green* (1995) 36 Cal.App.4th 280, 283.) It therefore does not matter if the definition of a strike has subsequently changed.

Defendant cites two cases holding that a change in the law can vitiate a strike prior.

In *People v. Watts* (2005) 131 Cal.App.4th 589 (*Watts*), the defendant admitted a prior conviction under former section 12031, subdivision (a)(2)(C), which prohibited carrying a loaded firearm in public while "an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22." (*Watts*, *supra*, at p. 592, quoting former § 12031, subd. (a)(2)(C).)

The *Watts* court held that the prior no longer constituted a strike. It noted that in *People v. Robles* (2000) 23 Cal.4th 1106 (*Robles*) — decided after the defendant's prior conviction — the Supreme Court had held that section 12031, subdivision (a)(2)(C) required more than just being an active participant in a gang; rather, by referring to section 186.22, subdivision (a), it incorporated that subdivision's additional requirements that the defendant (1) must know that gang members have participated in a pattern of

11

criminal gang activity, and (2) must have promoted, furthered, or assisted in felonious conduct by gang members.  (*Watts*, *supra*, 131 Cal.App.4th at pp. 592-594.)

The *Watts* court concluded that the defendant's pre-*Robles* admission that he had a prior conviction under former section 12031, subdivision (a)(2)(C) failed to establish that the prior was a strike, because it did not necessarily admit all the elements of section 186.22, subdivision (a).  (*Watts*, *supra*, 131 Cal.App.4th at pp. 594-597.)  It explained: "On an appellate challenge to a finding that a prior conviction was a strike, where the prior conviction is for an offense that can be committed in multiple ways, one or more of which would not qualify it as a strike, and *if it cannot be determined from the record that the offense was committed in a way that would make it a strike*, a reviewing court must presume the offense was not a strike." (*Id*. at p. 596.)  "[I]n order for Watts's 2000 conviction of section 12031(a)(2)(C) to qualify as a strike, it must be on the basis that the offense as committed 'constitute[d] a felony violation of Section 186.22' within the meaning of section 1192.7, subdivision (c)(28). . . . *Robles*, however, held that section 12031(a)(2)(C) was reasonably susceptible of two interpretations.  Under the 'reasonable construction' which the *Robles* court rejected, the elements of section 12031(a)(2)(C) include only one of the elements of section 186.22(a).  [Citation.]  If the statute is construed in this fashion, a conviction of section 12031(a)(2)(C) would therefore not constitute a violation of section 186.22 and thus would not qualify as a strike."  (*Ibid*.)

Similarly, in *People v. Strike* (2020) 45 Cal.App.5th 143 (*Strike*), the defendant argued that his prior conviction for active gang participation (§ 186.22, subd. (a)), which was based on a guilty plea, did not constitute a strike. (*Strike*, *supra*, at pp. 146-147.)

As the *Strike* court noted, in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) — decided after the defendant's prior conviction — the Supreme Court had held that a gang member acting alone cannot violate section 186.22, subdivision (a); rather, an active gang member must commit a felony offense with one or more fellow gang members. (*Strike*, *supra*, 45 Cal.App.5th at pp. 146, 149-150.)

The *Strike* court held that the guilty plea, standing alone, failed to establish that the prior conviction was a strike. It explained: "[A]t the time defendant entered his plea, it was not a required element of the gang participation offense that defendant had committed a felony offense with another member of his gang." (*Strike*, *supra*, 45 Cal.App.5th at p. 149.) "[I]n 2017, when the prosecution sought to prove defendant's 2007 gang participation conviction qualified as a strike, the understanding of the elements of the offense had shifted. *Rodriguez* had narrowed the scope of section 186.22(a). Certain conduct that was considered gang participation prior to *Rodriguez* no longer qualified. This change in the interpretation of section 186.22(a) rendered a pre-*Rodriguez* conviction inconclusive on its face as to whether it qualified as a strike. [Citation.]" (*Id*. at p. 150, fn. omitted.)

*Watts* and *Strike* are not controlling here, because they dealt with changes in the judicial interpretation of a statute, rather than amendments to the statute itself.

13

"'The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student. [Citations.] . . .'" (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207, italics omitted.)

"The general rule that judicial decisions are given retroactive effect is basic in our legal tradition." (*Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978.) "Whenever a decision undertakes to vindicate the original meaning of an enactment, putting into effect the policy intended from its inception, retroactive application is essential to accomplish that aim. [Citation.]" (*People v. Garcia* (1984) 36 Cal.3d 539, 549, overruled on other grounds in *People v. Lee* (1987) 43 Cal.3d 666, 676.) Accordingly, in *Robles* and *Rodriguez*, when the Supreme Court interpreted section 186.22, subdivision (a), it declared not only what that section meant at that time, but what it had always meant — including when the defendants in *Watts* and *Strike* suffered their respective prior convictions.

Here, defendant relies on rules applicable to *statutory* amendments, particularly the rule that "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date. [Citation.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 852.) However, defendant's 2009 conviction is long since final. When it became final, it was a strike. The fact that the Legislature has changed the definitions of active gang

participation and of a gang enhancement under section 186.22 cannot change the status of defendant's final 2009 conviction as a strike prior.[4]

Defendant also cites *People v. Millan* (2018) 20 Cal.App.5th 450 (*Millan*) and *People v. Figueroa* (1993) 20 Cal.App.4th 65 (*Figueroa*). However, these cases merely stand for the uncontroversial proposition that an appellant is presumptively entitled to the benefit of an ameliorative amendment that goes into effect while his or her appeal is pending.[5] They do not speak to the particular situation here — an amendment to the statute under which a now-final strike prior conviction was suffered.

Because we resolve defendant's present contention on the grounds just discussed, we do not reach the People's contentions that (1) Assembly Bill No. 333 is

---

[4]     We do not believe that *Watts* and *Strike* conflict with our holding that the status of a prior as a strike is fixed at the time of the conviction. If they could be read as conflicting with it, however, we would decline to follow them, because they did not consider the effect of the relevant language in the three strike law. "[I]t is axiomatic that cases are not authority for propositions not considered. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)

[5]     In *Millan*, the defendant was convicted of a drug-related crime, with drug-related prior conviction enhancements under Health and Safety Code section 11370.2, subdivision (c). (*Millan*, *supra*, 20 Cal.App.5th at p. 452.) While his appeal was pending, Health and Safety Code section 11370.2 was amended so that it was no longer triggered by his particular prior convictions. (*Millan*, *supra*, at pp. 454-455.) The appellate court held that the enhancements had to be stricken. (*Id*. at pp. 455-456.)

Similarly, in *Figueroa*, the defendant was convicted of drug-related crimes, with an enhancement for drug trafficking near a school under Health and Safety Code section 11353.6, subdivision (b). (*Figueroa*, *supra*, 20 Cal.App.4th at pp. 68-69.) While his appeal was pending, Health and Safety Code section 11353.6 was amended so as to require that the violation occur during school hours or when children are present. (*Figueroa*, *supra*, at p. 69.) Because there was no evidence of this at the defendant's trial, the appellate court held that the enhancement had to be reversed. (*Id*. at pp. 70-71.)

15

unconstitutional because it purports to amend section 1192.7, which was enacted by initiative, without the necessary two-thirds majority; and (2) defendant's contention constitutes an impermissible collateral attack on his 2009 conviction.

V

ERROR IN THE ABSTRACT

Defendant contends that the abstract of judgment erroneously fails to show that the restitution fine was suspended.

The People concede the error. We agree. The trial court imposed a $10,000 restitution fine but then suspended it. The abstract fails to reflect the suspension. We will direct the clerk of the superior court to amend the abstract.

VI

DISPOSITION

The judgment is affirmed. The clerk of the superior court is directed to correct the abstract of judgment so it shows that the $10,000 restitution fine was suspended, and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. (§§ 1213, 1216.)

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

16